MASSACHUSETTS BOARD OF REGIONAL COMMUNITY COLLEGES *vs.* LABOR RELATIONS COMMISSION & others.

Suffolk. January 5, 1979. — April 17, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Statute,* Retroactive statute. *Labor,* Unfair labor practice, Discharge for union activity. *Labor Relations Commission,* Burden of proof, Remedies.

Since G. L. c. 150E, § 11, affects only the remedies available to an aggrieved party, its application to cases pending on its effective date is appropriate. [850]

A finding by the Labor Relations Commission that an employee was discharged solely because of his union activities satisfied the standards enunciated in both *National Labor Relations Bd.* v. *Symons Mfg. Co.,* 328 F.2d 835, 837 (7th Cir. 1964), and *Mead & Mount Constr. Co.* v. *National Labor Relations Bd.,* 411 F.2d 1154, 1157 (8th Cir. 1969). [851]

A finding by the Labor Relations Commission that an employee was discharged solely because of his union activities was supported by substantial evidence, and the burden of proof was properly placed on the charging party. [851-852]

There was no merit to an employer's contention that an order of the Labor Relations Commission reinstating a discharged teacher exceeded the commission's authority because it had the effect of granting tenure to the teacher where the commission did not order reinstatement with tenure and where it did not appear from the record that a reinstatement order would necessarily result in tenure. [852]

CIVIL ACTION commenced in the Superior Court on August 5, 1975.

The case was heard by *Cross,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Joseph A. Furnari* for the plaintiff.

*Sharon Henderson Ellis* for Labor Relations Commission.

*Brian A. Riley,* for Massachusetts Teachers Association, intervener, submitted a brief.

BRAUCHER, J. In June, 1974, the Massachusetts Board of Regional Community Colleges (employer) terminated the employment of a teacher at one of its colleges. The Labor Relations Commission (commission), after hearings pursuant to G. L. c. 149, § 178F, concluded that the employer had committed a practice prohibited by that statute by terminating the teacher's employment in retaliation for protected union activity. Pursuant to G. L. c. 150E, § 11, effective July 1, 1974, the commission ordered reinstatement with back pay. We uphold the commission's order in all respects, and direct the entry of a judgment enforcing it.

The teacher, Michael Kressy, was advised in June, 1973, that his next yearly contract would be "terminal." In October, 1973, the Massachusetts Teachers Association (union) filed on his behalf a complaint of prohibited practice. The commission made a preliminary investigation and filed its complaint in February, 1974. After hearings in April, May and June, 1974, the commission issued its decision on June 30, 1975. The employer sought judicial review, the commission by counterclaim sought enforcement of its order, and the union intervened. A judge of the Superior Court upheld the application of the remedial section of G. L. c. 150E, but ruled that the commission had committed error of law and had made its decision upon unlawful procedures. He remanded the case to the commission. The employer, the commission and the union appealed, and we granted the commission's application for direct appellate review.

We summarize the facts found by the commission. The teacher was hired in September, 1969, and received positive evaluations in February of 1970, 1971 and 1972, resulting in promotions and salary increases. In February, 1972, after an organizational campaign in which the teacher took an active part, the faculty voted to be represented by the union for purposes of collective bargaining. The management of the college did not welcome unionization. In the spring of 1972, the teacher was elected to serve on the negotiating team and on the committee that prepared the union's "asking package." He also became the union's "information officer" and published a union newsletter. During the summer there were "heated arguments" between him and Dean Bassett, the chief negotiator for the college. In October he was elected vice president of the union; in March, 1973, he became president. In February, 1973, Dean Bassett was replaced as chief negotiator by the teacher's department chairman, Dr. O'Neill, and there was an "acrimonious debate" and "a vitriolic exchange at the bargaining table" between the teacher and Dr. O'Neill. Shortly thereafter, on February 23, 1973, Dr. O'Neill sent the teacher a memorandum entitled "Suggestions regarding your future performance," describing eight incidents, dating back to the spring of 1971, and charging that "a pattern of immaturity, obstructionism, lack of cooperation and arrogance has consistently been displayed in your relationship with administration." Dr. O'Neill visited one of the teacher's classes in April, 1973, and made a number of criticisms. In June, 1973, Dean Bassett informed the teacher that the decision to give him a terminal contract was based on the O'Neill memorandum of February 23, 1973.

The commission said that "the threshold requirement for the Commission in any case involving an alleged discriminatory discharge is to determine the actual motivation of the employer." It discussed in detail each of the employer's stated reasons for discharge. Some were found to be trivial or pretexts or not to be supported by evi-

dence; one was stale and had been condoned; the balance related to protected union activities. The commission concluded: "Considered individually, certain facts may not be of sufficient significance to warrant the conclusion that Mr. Kressy's discharge was in retaliation for his union activities. Taken together, however, the entire fact pattern makes this conclusion inescapable."

1. *Retroactive application of G. L. c. 150E, § 11.* Since it affects our jurisdiction to review the commission's order, we consider first the judge's ruling that the commission properly ordered a remedy under a statute that took effect after the prohibited conduct had taken place. Both G. L. c. 150E, § 10(*a*)(3), effective July 1, 1974, and the statute it superseded, G. L. c. 149, § 178F(8), prohibited discrimination in employment on account of union activity. Before the enactment of c. 150E, the commission could only make "recommendations for resolving" the prohibited practice. G. L. c. 149, § 178F(10), as amended through St. 1972, c. 713, § 1. Under G. L. c. 150E, § 11, however the commission could order the employee reinstated with back pay subject to judicial enforcement and review.

Because § 11 affects only the remedies available to the aggrieved party, its application to cases pending on its effective date is appropriate. *Austin* v. *Boston Univ. Hosp.*, 372 Mass. 654, 657 (1977). *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 628 (1974). *Kagan* v. *United Vacuum Appliance Corp.*, 357 Mass. 680, 683-684 (1970). We draw no inference of any legislative intent to the contrary from the fact that the effective date of G. L. c. 150E was delayed more than a year and a half following its enactment. The delay appears to be explained by the substantive changes made in the scope and process of collective bargaining. Those changes are not involved here. Where a State enacts retroactive legislation impairing its own rights, it cannot be heard to complain on constitutional grounds. *Greenaway's Case*, 319 Mass. 121, 123 (1946), and cases cited.

377 Mass. 847                                                  851

Massachusetts Board of Regional Community Colleges *v.* Labor Relations Comm'n.

2. *Motivation for discharge.* In its opinion, the commission quoted from *National Labor Relations Bd.* v. *Symons Mfg. Co.*, 328 F.2d 835, 837 (7th Cir. 1964): "The mere existence of valid grounds for a discharge is no defense to a charge that the discharge was unlawful, unless the discharge was predicated *solely* on those grounds, and not by a desire to discourage union activity" (emphasis supplied). The judge ruled that it was an error of law to follow that rule, and directed the commission to follow the guidelines set forth in *Mead & Mount Constr. Co.* v. *National Labor Relations Bd.*, 411 F.2d 1154, 1157 (8th Cir. 1969): "The General Counsel has the burden of proving by a fair preponderance of the evidence that the employee was discharged for his union activities or membership—that *but for* his union activities or membership, he would not have been discharged" (emphasis supplied).

We need not decide which is the appropriate standard for proof of discriminatory motive, since the commission's findings meet either standard. It is apparent from the portions of the commission's decision we have quoted that it found that the teacher was discharged solely because of his union activities. Such a finding satisfies the "but for" test.

3. *Burden of proof.* The judge ruled that the commission's decision as written was unclear as to burden of proof, and directed the commission to "follow the teaching" of *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 139 (1976). See *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 230-232 (1978). The *Wheelock College* case was decided after the commission's decision, and the commission did not use the terminology of "prima facie case." It now argues that it substantially complied with the procedures set forth in the *Wheelock College* case.

The *Wheelock College* and *Smith College* cases involved sex discrimination rather than discrimination by reason of union activity, and the elements of a prima facie case

would obviously be different in the two types of cases. If the commission were to decide to follow the *Wheelock College* procedure, it would have to define the elements of a "prima facie case" and then determine whether those elements were proved. *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 229 (1978). We do not pursue these matters further, since the *Wheelock College* opinion makes it clear that discrimination may be proved without regard to a "prima facie case." 371 Mass. at 135.

The commission in the present case did not rely on a "prima facie case." Instead, it arrived at a factual conclusion based on all the circumstances, and, in our opinion, there was substantial evidence to support that conclusion. We do not regard the quotation of *National Labor Relations Bd.* v. *Texas Bolt Co.*, 313 F.2d 761, 763 (5th Cir. 1963), as showing any confusion as to burden of proof. We think the burden of proof was properly placed on the charging party. Moreover, once there is an affirmative finding without reference to the burden, the issue of burden of persuasion is out of the case. *First Nat'l Bank* v. *Brink*, 372 Mass. 257, 265 (1977).

4. *Other issues.* The employer argues that the commission's order has the effect of granting tenure to Kressy and therefore exceeds the commission's "jurisdictional authority and power." The commission did not order reinstatement with tenure. Cf. *Bradley* v. *School Comm. of Boston*, 373 Mass. 53, 59 (1977) (challenge to arbitrator's award); *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n*, 372 Mass. 121, 126-127 (1977) (same). Nor does it appear from the record that a reinstatement order would necessarily result in tenure or foreclose the employer from later deciding whether or not to grant tenure. See G. L. c. 15, §§ 28, 35 (powers of board of regional community colleges).

Contrary to the employer's contention, we find nothing in the commission's decision to suggest that the commission members who participated had not read the entire record.

5. *Disposition.* The judgment is reversed and the case remanded to the Superior Court for the entry of a judgment affirming the decision of the commission.

*So ordered.*