Southern Worcester Cty. Regional Vocational Sch. Dist. *v.* Labor Relations Comm'n.

SOUTHERN WORCESTER COUNTY REGIONAL VOCATIONAL
SCHOOL DISTRICT *vs.* LABOR RELATIONS COMMISSION.

Worcester. June 8, 1981. — July 3, 1981.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Labor Relations Commission. Labor,* Unfair labor practice, Discharge
for union activity. *School and School Committee,* Termination of
employment, Tenure.

Under G. L. c. 150E, § 11, the Labor Relations Commission is author-
ized to issue and proceed on its own complaint and in its own name.
[191-192]

The Labor Relations Commission did not err in denying an employer's
motion to sever various charges against it and to proceed seriatim.
[192-193]

In rendering a decision on unfair labor practices complaints, the Labor
Relations Commission was warranted in repeating verbatim its find-
ings of fact in a prior case between the same parties where the evidence
in the later case supported the findings made in the earlier case. [193]

In a proceeding on a complaint that a district school committee had en-
gaged in unfair labor practices in voting not to reappoint eight teach-
ers, the Labor Relations Commission erred in granting relief as to two
of the teachers who failed to adduce sufficient evidence to warrant an
inference that a majority of the members of the committee had en-
gaged in unlawful discrimination in voting not to reappoint them for
the succeeding year. [193-196]

Where the Labor Relations Commission, in its decision on a complaint
that a district school committee had engaged in unfair labor practices
in voting not to reappoint eight teachers, indiscriminately analyzed
and made findings as to the motives of the superintendent in recom-
mending against the appointment of six of the teachers and the com-
mittee in voting not to reappoint those six and failed to take into ac-
count the provisions of G. L. c. 71, § 38, which prohibit a committee
from reappointing a teacher against the recommendation of the super-
intendent, the case was remanded to the commission for further in-
quiry as to the motives of the superintendent alone. [196-198]

Under G. L. c. 150E, § 11, the Labor Relations Commission may, in an
appropriate case, grant tenure to a teacher who has been denied reap-

pointment for a fourth year because of a school committee's unlawful discrimination. [198-200]

CIVIL ACTION commenced in the Superior Court Department on January 26, 1979.

The case was heard by *Beaudreau, J.*

*James F. Cosgrove (Paul S. Hughes* with him) for the plaintiff.

*Jean Strauten Driscoll* for the defendant.

GRANT, J.  The school year 1972-1973 was the first year of operation of the regional vocational school run by the Southern Worcester Regional Vocational School District (district).  The last collective bargaining agreement between the district and the union which represents the school's teachers expired on August 31, 1974.  On August 13 a tentative agreement was reached by negotiators for a new contract for the school year 1974-1975.  That agreement was overwhelmingly rejected by the teachers on September 6.  Further negotiations broke off abruptly on September 16.  In November both the union and the district filed charges of prohibited labor practices with the Labor Relations Commission (commission).  The relations between the parties following September 16 and the ultimate disposition of their respective complaints are set out in *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.,* 377 Mass. 897 (1979) (the earlier case).

During the period March 31 through July 24, 1975, eight teachers[1] (some of them officers of the union) filed complaints with the commission in which they severally alleged (in effect) that by reason of one or more votes taken by the school committee (committee) on March 3, April 7 and July 7, 1975, they had not been reappointed for the school year 1975-1976 and that the relevant votes constituted reprisals against the teachers for their having engaged in

---

[1] Robert Bourke, Richard Clark, George Lorkiewicz, Joseph McKeon, Norman Mercier, Norman Proulx, Maryann Yurek and Stephen Yurek.

protected union activities, contrary to various of the provisions of G. L. c. 150E, § 10(a).[2] Following some sort of investigation, the commission issued a consolidated complaint which (as subsequently amended) alleged that the committee had voted not to reappoint each of the eight teachers "[by] reason of his participation and engagement in lawful concerted activities for the purpose of collective bargaining or other mutual aid or protection, including picketing and related activities."[3] The district was charged with violations of G. L. c. 150E, § 10(a)(1) through (4).

Following some procedural skirmishes, hearings on the complaint were commenced on September 4, 1975, and ultimately concluded on December 16, 1977.[4] On December 28, 1978, the commission rendered a decision in which it found that the district had engaged in certain prohibited practices and ordered relief as to each of the eight teachers. The district took the decision to the Superior Court under G. L. c. 30A, § 14; the commission counterclaimed for enforcement of its orders. The court denied a motion to intervene filed by the teachers and by the union, which had prosecuted the case before the commission. After a perfunctory review of the record before the commission, the court entered a judgment which affirmed the decision and ordered the district to comply with its provisions. The district appealed.

1. The district complains of a number of procedural irregularities.

(a) It argues with considerable force that the provisions of G. L. c. 150E, § 11, contemplate that proceedings such

---

[2] A ninth complaint was filed by the president of the union with respect to a letter of reprimand which had been placed in his file, but that complaint appears now to have been lost in the shuffle.

[3] There was no strike. The picketing was aimed at getting the committee back to the bargaining table.

[4] A significant portion of the delay in concluding the hearings was attributable to the district, which unsuccessfully sought relief in the Superior Court from an interlocutory ruling of the commission which is no longer in issue.

as the present be heard and determined by the commission on complaints filed by employees and that it was error for the commission to issue its own complaint and determine the truth of its own allegations. If the question were one of first impression, we might be inclined to agree. The difficulty with the contention is that in *Dedham* v. *Labor Relations Commn.*, 365 Mass. 392, 399, 405 (1974), the Supreme Judicial Court read the provisions of the third paragraph of G. L. c. 149, § 178L (as in effect prior to St. 1973, c. 1078, §§ 1, 2 and 7), which were substantially similar to those now found in G. L. c. 150E, § 11, to authorize the commission to issue and proceed on its own complaint and in its own name. That practice was followed in *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Commn.*, 377 Mass. 847, 848 (1979), and in the earlier case, 377 Mass. at 898. We have expressed the view that that practice does not violate due process. *School Comm. of Stoughton* v. *Labor Relations Commn.*, 4 Mass. App. Ct. 262, 272-273 (1976). As the district does not complain that the practice employed here resulted in any prejudice to it, we do not pursue the question.[5]

(b) The district urges that it was error for the commission to deny its motion to sever the various charges and to proceed on them seriatim. The argument makes light of the factual background of strained labor negotiations and subsequent union activism which was material to the question of the motives of the committee and the school's superintendent-director (superintendent) and which was common to all the charges. It was not until quite late in the proceedings that counsel for the district made any effort (and then in only two instances) to limit the application of evidence to a particular charge. The commission, in its deci-

---

[5] We note on our own that there was no compliance with the requirements of the present fifth through ninth sentences of the third paragraph of § 11, which appear to have been designed in part to prevent too easy acceptance by the commission of the truth of the allegations of any complaint. If the hearing officer is still available, those requirements are to be met on the remand ordered under part 3 of this opinion.

12 Mass. App. Ct. 189                                    193

Southern Worcester Cty. Regional Vocational Sch. Dist. v. Labor Relations Comm'n.

sion, followed a pattern of marshalling most of the evidence material to each charge and resolving each individually. The district points to no prejudice flowing from the procedure which was followed, and we are not persuaded that the commission abused its discretion in the premises.

(c) The commission had issued its decision in the earlier case more than a year prior to the conclusion of the hearings in the present case. Without prior notice to anyone (see G. L. c. 30A, § 11 [4] and [5]) the commission repeated verbatim in its decision in this case the bulk of its findings of fact in the earlier case concerning the breakdown in the labor negotiations and subsequent union activism. The commission purported to act on principles of collateral estoppel. We find it unnecessary to decide whether there was error. The facts found in the earlier case assumed significance only as they served to illuminate the atmosphere which prevailed between certain teachers and the union on the one hand and certain members of the committee and the superintendent on the other and thus to lay the basis for an inference that the actions of the committee and the superintendent had been motivated by antiunion bias. A careful review of the evidence in the present case discloses that the critical findings from the earlier case were supported by the evidence in the present case. In particular, the evidence in this case was sufficient to warrant findings of all the facts discussed in the court's opinion in the earlier case. Again, we are not persuaded of prejudice.

2. There are two basic obstacles which stand in the way of affirming the commission's present decision. The first is that Stephen and Maryann Yurek have failed to sustain their respective burdens of proving that a majority of the members of the committee were motivated by antiunion bias when they voted not to employ either for another year. See *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 226, 232 (1978). The following is a summary of the evidence relevant to this problem.

Stephen Yurek, who was the president of the union, was in his second year at the school. Maryann, his wife,[6] was in her third year and up for tenure under G. L. c. 71, § 41.[7] Shortly prior to March 3, 1975, the superintendent, one Gorman, recommended to the committee that Stephen be appointed for a third year and that Maryann be appointed for a fourth year. At its meeting on March 3 the committee voted unanimously to appoint Stephen for a third year. One of the members of the committee who had been the chairman of its negotiating team (Lenky) succeeded in having the question of Maryann's candidacy postponed to a subsequent meeting of the committee. That meeting took place on April 7, 1975, eight days prior to the April 15 deadline for giving Maryann written notice under § 41 if she were not to be given tenure.

At that meeting one of the members (Abbey) moved the appointment of Maryann for a fourth year; the motion was defeated by a vote of six to five against.[8] The six who voted against were Bachand (the chairman), Champeau, DeAngelis, Lenky, Vendetti and Ziemski. There was evidence from which (we shall assume for purposes of this opinion) the commission could properly have found that the votes of Bachand, Vendetti and Ziemski were motivated by general antiunion bias that might have rubbed off on Maryann.[9]

---

[6] They were married in December of 1974.

[7] The provisions of G. L. c. 71, §§ 38, 41, 42 and 43A, apply to the district by virtue of the first paragraph of G. L. c. 71, § 16. See *Blue Hills Regional Dist. Sch. Comm.* v. *Flight,* 10 Mass. App. Ct. 459, 464 (1980), *S.C.,* 383 Mass. 642 (1981).

[8] The total authorized membership of the committee was twelve, with two members from each of the six towns comprising the district. One of the members had resigned (see note 9, *infra*), with the result that only eleven votes could be cast.

[9] There was evidence that Bachand had expressed to a group of picketing teachers the thought that they should display as much enthusiasm for their teaching duties as they did for picketing; that Vendetti had called some pickets "a group of assholes"; and that Ziemski regarded one of the union activists (Lorkiewicz) as an ingrate in view of an expensive favor the committee had done for him in the past. The commission found that

There was no substantial evidence from which it could have been found that Champeau, Lenky or DeAngelis entertained any antiunion bias.[10] For all that appears, two of them (Champeau and DeAngelis) could have been rabid union enthusiasts.[11]

At a meeting of the committee on April 23, Abbey expressed the sentiment that the vote as to Maryann had been motivated by "her or her husband's involvement with the [union]." There was no evidence that any of the other members of the committee expressed agreement with that sentiment. See and compare *School Comm. of Stoughton* v. *Labor Relations Commn.*, 4 Mass. App. Ct. at 263-264, 266-267. On July 7, 1975, the committee voted to terminate Stephen[12] and to grant tenure to Maryann.[13] The rec-

Ziemski's opinion of Lorkiewicz was shared by another member of the committee (one Couzzens), but that finding is misleading because, on his own testimony, Couzzens had resigned from the committee at the end of January, 1975.

[10] Nor was there any evidence from which it could have been found that any negative vote of any member of the committee was influenced by an awareness of any antiunion bias that Gorman may have harbored. The uncontradicted evidence was that Gorman never disclosed his reasons for not recommending any individual and that he did not even take personnel folders to committee meetings. Similarly, there was no evidence from which it could have been found that any member of the committee had ever given Gorman any instruction, or even any suggestion, as to the criteria on which he should base his recommendations.

[11] The union made no effort to call any committee member for the purpose of cross-examining him as to his motives. Its cross-examination of the only members who did testify (Bachand and Lenky) was directed to other matters.

[12] Gorman testified that he had belatedly recommended Stephen's termination because of overstaffing in his department. We think the commission, in assessing Gorman's over-all attitude towards the union, has failed to come to grips with the undisputed facts that Gorman found Stephen a better paying job in another vocational school within driving distance, that Stephen had accepted that job and surrendered his contract for the school year 1975-1976 prior to the committee's vote of July 7, that Gorman offered Stephen a position which unexpectedly became vacant in the following September, and that Stephen rejected the offer.

[13] Maryann's complaint was filed shortly after the vote of April 7, 1975. Because of the vote of July 7, the commission awarded her her (assumed)

ord does not disclose how any member voted on either question. Indeed, it is matter of conjecture whether any of Bachand, Vendetti and Ziemski were even present at the meeting.

It follows from the foregoing analysis that both Yureks failed to present a prima facie case of unlawful discrimination (see *Wheelock College* v. *Massachusetts Commn. Against Discrimination,* 371 Mass. 130, 135-136 [1976]; *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Commn.,* 377 Mass. at 851) because neither adduced sufficient evidence to warrant an inference of unlawful discrimination on the part of a majority of the members of the committee. See again *Smith College* v. *Massachusetts Commn. Against Discrimination,* 376 Mass. at 226, 232. The consequence is that so much of the decision as grants relief to the Yureks must now be set aside.[14]

3. Each of the other six teachers[15] was in his third year at the school and thus up for tenure. Gorman recommended against the reappointment of all six, and the committee so voted at its meeting of March 3, 1975. The commission, in its decision, indiscriminately analyzed and made findings as to the motives of both the committee and Gorman in the circumstances. It is that phenomenon which gives rise to the basic obstacle in the way of affirming the balance of the present decision. The commission obviously failed to apprehend the import of the second sentence of the second paragraph of G. L. c. 71, § 38, as appearing in St. 1974,

---

expenses in looking for other employment during the period from April to July. The decision contemplates further proceedings to determine the damages sustained by each of the eight teachers.

[14] Stephen now has a better paying job and has rejected an offer which would have permitted him to return to the school. It does not appear that Maryann lost any pay, and she now has tenure. Accordingly, we see no reason for the commission to grant a rehearing or to reopen the present proceedings in order to allow either of them to introduce further evidence on the question of liability.

[15] Bourke, Clark, Lorkiewicz, McKeon, Mercier and Proulx.

c. 342.[16]  Because of that statute, and because Gorman had recommended against the reappointment of all six, the committee was powerless to reappoint any of the six, and its votes of March 3 were nothing more than empty formalities.  See *Farrington* v. *School Comm. of Cambridge,* 382 Mass. 324, 325 & n.1, 327 (Braucher, J., dissenting) (1981).  See also *Bonar* v. *Boston,* 369 Mass. 579, 582-584 (1976), which was decided with reference to the virtually identical provisions of St. 1965, c. 208, § 1.  The commission should have focused its inquiry exclusively on Gorman's motives for not recommending each of the six.  It did not, and there is no way of knowing what ultimate conclusions it would have reached if it had done what it was supposed to do.  Accordingly, the case must be remanded to the commission for further consideration on the present record.

We trust the commission will not be too quick to draw adverse inferences from the timing of Gorman's recommendations[17] or from the fact that he did not give any of the six advance notice of his intentions.  Few of the teachers had tenure under G. L. c. 71, § 42B, and, because the school was in its third year of operation, a large proportion of the faculty were up for tenure and would automatically acquire that status under G. L. c. 71, § 41, unless properly notified to the contrary by April 15, 1975.  The statute imposed no obligation on Gorman to give any earlier notice of his intentions.[18]  We trust the commission also understands that any future decision it may render will be subject to judicial scrutiny under the "substantial evidence" test, under which a court is obliged to consider all the evidence which detracts

---

[16] "No election, contract, or promotion of a teacher shall be made by a school committee unless such person shall have been nominated for such election, contract, or promotion by the superintendent of schools."

[17] See and contrast *Labor Relations Commn.* v. *Blue Hill Spring Water Co.,* 11 Mass. App. Ct. 50, 62-63 (1980); *Burlington* v. *Labor Relations Commn., ante,* 184, 187-188.

[18] There was no evidence of any contractual obligation to give advance notice.  As the school was only in its third year, there could have been no relevant prior practice.

from the weight of whatever evidence the commission relies on to support its conclusions.[19]  *Cohen* v. *Board of Registration in Pharmacy,* 350 Mass. 246, 253 (1966).  *New Boston Garden Corp.* v. *Assessors of Boston,* 383 Mass. 456, 465-466 (1981).  Finally, we trust the commission understands what we said in *International Bhd. of Police Officers* v. *Labor Relations Commn.,* 11 Mass. App. Ct. 269, 274 (1981).

4.  The district, following an exhaustive analysis of the evidence, has concluded that the commission overlooked the third step for determining motive which was delineated in *Wheelock College* v. *Massachusetts Commn. Against Discrimination,* 371 Mass. at 136.  We need not pass on the correctness of that conclusion at this juncture.  At two places in its present decision, one in the portion where the commission instructed itself as to the applicable law and the other near the conclusion, the commission indicated that it was employing the "dominant purpose" analysis of motive, which is nothing more than another name for the "but for" analysis.  If the commission makes it clear in any further decision that it has employed the "dominant purpose" analysis, it need not expressly articulate the third step of the *Wheelock College* analysis.  See *Smith College* v. *Massachusetts Commn. Against Discrimination,* 376 Mass. at 227 n.8; *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Commn.,* 377 Mass. at 851; *International Bhd. of Police Officers* v. *Labor Relations Commn.,* 11 Mass. App. Ct. at 270 n.2.

5.  The interesting question which has been argued is whether the commission can grant tenure to the six teachers who were not reappointed for a fourth year.  The question has been skirted on prior occasions.  See *Massachusetts Bd.*

---

[19] As counsel for the commission conceded at the argument, not once in the course of proceedings which generated more than 700 pages of testimony did the commission resolve a question of credibility in favor of the committee or Gorman.  The commission must have in mind that it cannot submerge under the guise of disbelief any legitimate, nondiscriminatory reasons which Gorman may have had for his recommendations which are supported by evidence.  See the *Wheelock College* case, 371 Mass. at 136.

*of Regional Community Colleges* v. *Labor Relations Commn.*, 377 Mass. at 852; *International Bhd. of Police Officers* v. *Labor Relations Commn.*, 11 Mass. App. Ct. at 271 n.3.

General Laws c. 150E, § 10(*a*), provides: "It shall be a prohibited practice for a public employer or its designated representative to . . . (3) [d]iscriminate in regard to hiring, *tenure,* or any term or condition of employment to . . . discourage membership in any employee organization . . ." (emphasis supplied). The fourth paragraph of § 11 of the same chapter reads in relevant part: "If, upon all the testimony, the commission determines that a prohibited practice has been committed, it shall . . . issue and cause to be served on the party committing the prohibited practice an order requiring it or him to cease and desist from such prohibited practice, and shall take . . . affirmative action . . . . It shall order the reinstatement with or without back pay of an employee discharged or discriminated against . . . ." The concluding clause of § 8 of that chapter provides that a collective bargaining agreement between a teachers' union and a public employer may contain a provision to the effect that questions involving the dismissal of teachers tenured under G. L. c. 71, § 41, are (if the individual teachers so elect) to be determined by a grievance procedure which includes arbitration rather than in accordance with the procedures provided in G. L. c. 71, §§ 42 and 43A. See *Sullivan* v. *Belmont,* 7 Mass. App. Ct. 214, 217-219, further appellate review denied, 377 Mass. 921 (1979).

We regard the summarized provision of § 8 as persuasive evidence that the Legislature had the problems of teachers' tenure in mind when it provided in § 11 that the commission is to order "reinstatement" of a teacher who has been subjected to a prohibited practice. It has been held that the provisions of § 11 are remedial in nature. *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Commn.,* 377 Mass. at 850. In *School Comm. of Stoughton* v. *Labor Relations Commn.,* 4 Mass. App. Ct. at 270, we placed a broad construction on the word "reinstatement" as

it was employed in the immediate predecessor of § 11. A reinstatement, if it is to be truly effective, must place a teacher in the same position he would have enjoyed but for unlawful discrimination. After careful consideration of all the arguments advanced by the parties, we conclude that if the commission, on further consideration, orders the reinstatement of any of the six teachers still in issue, the district and the committee must treat them as tenured, subject to the rights of all concerned under G. L. c. 71, §§ 42 and 43A.[20]

The judgment is reversed, and the case is to be remanded to the commission for further proceedings consistent with this opinion; the Superior Court may retain jurisdiction over the case; costs of appeal are not to be awarded to either party.

*So ordered.*

---

[20] We have reached this conclusion without reliance on the recent decision in *Blue Hills Regional Dist. Sch. Comm.* v. *Flight*, 383 Mass. 642 (1981).