414                                386 Mass. 414

Southern Worcester County Reg. Vocational School Dist. *v.* Labor Relations Comm'n.

SOUTHERN WORCESTER COUNTY REGIONAL VOCATIONAL
SCHOOL DISTRICT *vs.* LABOR RELATIONS COMMISSION.

Worcester.  February 4, 1982. — June 3, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Labor Relations Commission*, Burden of proof. *Labor*, Unfair labor prac-
tice, Discharge for union activity. *Administrative Law*, Substantial
evidence. *School and School Committee*, Termination of employ-
ment, Tenure.

Discussion of the standard to be applied by the Labor Relations Commis-
sion on unlawful discharge claims under G. L. c. 150E, § 10 (*a*) (1) &
(3), when an employer accused of discharging an employee for union
activity assigns independent, lawful reasons for the discharge, and of
the burden of proof in such cases. [417-419]
In an unfair labor practice case, findings by the Labor Relations Commis-
sion that employees were discharged because of their union activities
were based upon substantial evidence. [419-421]
Under G. L. c. 150E, § 1, the Labor Relations Commission may order
reinstatement of a teacher who has been unlawfully discharged for
engaging in union activity, even if such reinstatement results in the
teacher's obtaining tenure. [423-424]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 26, 1979.

The case was heard by *Beaudreau, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted a request for further appellate review.

*Jean Strauten Driscoll* for the defendant.
*James F. Cosgrove* for the plaintiff.

ABRAMS, J.  We granted the Labor Relations Commis-
sion's (commission) application for further appellate review
to set out the legal standard and burden of proof which
should govern unlawful discharge cases arising under G. L.
c. 150E, § 10 (*a*) (1) & (3).[1]  We also consider the remedial

[1] In its application for further appellate review, the commission also
asks us to consider whether G. L. c. 71, § 38, forecloses consideration of

386 Mass. 414                                                    415

Southern Worcester County Reg. Vocational School Dist. *v.* Labor Relations Comm'n.

powers of the commission pursuant to G. L. c. 150E, § 11. We hold that the commission may determine that a discharge violates G. L. c. 150E, § 10 (*a*) (1) & (3), if it is proved that the employee would not have been discharged but for his protected activity. In addition, we think that the employee must bear the ultimate burden of persuading the commission that his discharge was unlawful. We also hold that the remedial powers of the commission include the power to direct a school committee to reinstate a teacher even if the reinstatement means that a teacher will attain tenure.[2]

---

evidence showing unlawful motivation on the part of a school committee. General Laws c. 71, § 38, as amended through St. 1981, c. 96, provides in pertinent part that "[n]o election, contract, or promotion of a teacher shall be made by a school committee unless such person shall have been nominated for such election, contract or promotion by the superintendent of schools." Thus, a school committee must follow the superintendent's recommendation not to reappoint a teacher. Relying on G. L. c. 71, § 38, the Appeals Court concluded that in the case of teachers not recommended by the superintendent, the commission should focus solely on the superintendent's motives. *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n,* 12 Mass. App. Ct. 189, 196-197 & n.16 (1981).

However, we need not decide whether it is proper for the commission to consider the school committee's motives when teachers are not recommended by the superintendent. In this case, there was sufficient evidence of antiunion motivation on the part of the superintendent to support the commission's finding that the teachers who were not recommended were discharged in retaliation for union activity. The superintendent made antiunion statements. He urged the teachers not to join the association. He threatened nontenured teachers who supported the union with economic reprisals. He reprimanded three teachers for distributing union literature at the school's open house. In an earlier case arising out of these circumstances, the commission determined that the superintendent's actions interfered with protected activity. *Southern Worcester County Regional Vocational School Dist.,* 2 M.L.C. 1488 (1976). We affirmed that decision. *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n,* 377 Mass. 897 (1979).

[2] The Appeals Court concluded that the commission may order the school committee to reinstate a teacher even if the reinstatement means that that teacher will attain tenure. 12 Mass. App. Ct. at 199-200. Neither party has asked us to reconsider that conclusion. "However, when this court grants further appellate review under G. L. c. 211A, § 11, inserted by St. 1972, c. 740, § 1, the issues to be considered . . . are not limited to those urged as grounds for further appellate review,

We summarize the facts: Serving the towns of Auburn, Charlton, Dudley, Oxford, Southbridge, and Webster, the Southern Worcester County Regional Vocational School District (district) has operated the Bay Path Vocational High School (school) since December, 1972. Joseph Gorman is the superintendent-director. The Bay Path Vocational Association (association) is the teachers' exclusive representative for the purpose of collective bargaining.

The last contract between the district and the association expired on August 31, 1974. By mid-August, a draft of a proposed agreement covering the 1974-1975 school year was prepared. On September 6, 1974, the teachers rejected the draft of the proposed agreement. After this rejection, negotiations between the association and the district broke off. In an earlier action arising out of these circumstances, the commission concluded that the district had unlawfully refused to negotiate with the association. *Southern Worcester County Regional Vocational School Dist.*, 2 M.L.C. 1488 (1976). We affirmed that decision. *Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm'n*, 377 Mass. 897 (1979).[3]

During the 1974-1975 school year, the district employed ninety-five teachers. Fifteen had tenure; eighty did not. Superintendent Gorman recommended that the school committee not reappoint eleven nontenured teachers for the 1975-1976 year. Following the superintendent's recommendation, the Southern Worcester County Regional Vocational District School Committee (committee) voted, at their March 3, 1975, meeting, not to reappoint these eleven teachers.[4] Six teachers, Robert Bourke, Richard Clark,

---

unless the order authorizing further appellate review sets forth such a limitation." *Ford* v. *Flaherty*, 364 Mass. 382, 387 n.3 (1973), quoting *Ballantine* v. *Falmouth*, 363 Mass. 760, 762 n.2 (1973). We agree with the conclusion reached by the Appeals Court. See part 3, *infra*.

[3] Relying on the doctrine of collateral estoppel, the commission incorporated its findings of fact in the earlier case into its decision in this case.

[4] Of the eleven teachers, three were not certified, and thus were ineligible for reappointment, and two did not file complaints with the commission.

George Lorkiewicz, Norman Mercier, Norman Proulx, and E. Joseph McKeon, filed complaints with the commission.

At the same meeting, the committee voted to reappoint Stephen Yurek, the president of the association, but postponed consideration of the reappointment of Maryann Yurek, his wife. On April 7, 1975, the committee voted not to reappoint Maryann Yurek. However, in July, 1975, the committee reversed these decisions. The committee voted to reappoint Maryann Yurek and to terminate Stephen Yurek. Stephen and Maryann Yurek also filed complaints with the commission.

The commission issued a consolidated complaint, charging that the district's action concerning these eight nontenured teachers violated G. L. c. 150E, § 10 (*a*) (1) - (4). Hearings began in September, 1975, and concluded in December, 1977. In December, 1978, the commission ruled that the district had committed unfair labor practices and ordered the teachers reinstated with back pay, and without prejudice to the teachers' seniority and tenure rights.

Pursuant to G. L. c. 30A, § 14, the district appealed to the Superior Court. A judge of the Superior Court affirmed the commission's decision and ordered the district to comply with its provisions. Again, the district appealed. The Appeals Court reversed the judgment of the Superior Court and remanded the case to the commission.[5] See *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n,* 12 Mass. App. Ct. 189 (1981). We affirm the judgment of the Superior Court, upholding the commission's finding that the district violated G. L. c. 150E, § 10 (*a*) (1) & (3), and ordering that the teachers be reinstated.

1. *Standard for discharge cases arising under G. L. c. 150E, § 10 (a) (1) & (3).* On appeal, the district claims that the trial judge erred in upholding the commission's

---

[5] Before the Appeals Court, the district also complained of several procedural irregularities. We are in substantial agreement with the Appeals Court's conclusions on these procedural questions.

decision because it was based on the wrong legal standard and burden of proof. In its decision, the commission employed the dominant motive, or "but for," test. In addition, the commission followed the allocation of the burden of proof used in our sex discrimination cases. See *School Comm. of Braintree* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 424, 429-430 (1979); *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 229-230 (1978); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 136-139 (1976). Thus, the commission applied the legal standard and burden of proof which we subsequently held should govern unlawful discharge cases. See *Trustees of Forbes Library* v. *Labor Relations Comm'n*, 384 Mass. 559, 561-562 (1981).

In that case, we concluded that the commission could find a discharge unlawful under G. L. c. 150A, §§ 3, 4 (1), 4 (3), only if it found "that the employee would not have been discharged but for his protected activity. . . . If, however, a lawful cause would have led the employer to the same conclusion even in the absence of protected conduct, the discharge must not be disturbed." *Id.* at 561-562. We believed that this "but for" test strikes an "equitable balance among the interests at stake; the employer is not forced to accept an unsatisfactory employee, and a union organizer is subject to discipline to the same extent as other employees." *Id.* at 563.

Having chosen the "but for" test, we then set out the allocation of the burden of proof in unlawful discharge cases under G. L. c. 150A, §§ 3, 4 (1), 4 (3). *Id.* at 561. We followed "the pattern established in our sex discrimination cases; the employee must bear the ultimate burden of persuasion, but may rely on a prima facie showing to shift to the employer a limited burden of producing evidence." *Id.* at 561.

To establish a prima facie case, an employee need not introduce direct evidence of unlawful motive such as anti-union statements. "The presence of an anti-union motivation

by an employer is a factual matter which the [commission] may resolve upon circumstantial evidence from the record as a whole."[6] *Pasco County School Bd.* v. *Florida Pub. Employees Relations Comm'n*, 353 So. 2d 108, 119 (Fla. App. 1977). See *Universal Camera Corp.* v. *NLRB*, 340 U.S. 474 (1951); *Singer Co.* v. *NLRB*, 429 F.2d 172, 179-180 (8th Cir. 1970); *Ridgely Mfg. Co.* v. *NLRB*, 510 F.2d 185, 186 (D.C. Cir. 1975).

However, if the employer has stated a lawful reason for its decision and produces supporting facts, the prima facie case is rebutted. Thereafter, "[t]he burden of persuasion remains with the employee, who must prove by a preponderance of evidence that the asserted lawful reason was not the real reason for the discharge." *Trustees of Forbes Library* v. *Labor Relations Comm'n*, 384 Mass. 559, 566 (1981). This allocation of the burden of proof preserves employer discretion in matters outside the province of the commission. *Id.* at 567.

The legal standard and burden of proof set out in *Trustees of Forbes Library* v. *Labor Relations Comm'n, supra*, should govern unlawful discharge claims arising under G. L. c. 150E, § 10 (*a*) (1) & (3). This approach strikes an "equitable balance between the rights of an employer whose duty . . . is to promote the efficiency of public services through its public employees, and the rights of a nontenured public school teacher to be secure in his employment, free from discrimination due to his union activity." *Pasco County School Bd.* v. *Florida Pub. Employees Relations Comm'n*, 353 So. 2d 108, 117 (Fla. App. 1977).

2. *Substantial evidence.* The district argues that the commission's decision should be reversed, because it was not supported by substantial evidence. We disagree.

General Laws c. 30A, § 1 (6), defines "[s]ubstantial evidence" as "such evidence as a reasonable mind might accept

---

[6] In this case, there was direct evidence of unlawful antiunion animus. At least three members of the school committee, as well as the superintendent, made antiunion statements. See note 1, second par., *supra*.

as adequate to support a conclusion." "This does not permit a court to treat the proceeding as a trial de novo on the record which was before the administrative board. A court may not displace an administrative board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo. *Universal Camera Corp.* v. *National Labor Relations Bd.* 340 U.S. 474, 488 [1951]." *Labor Relations Comm'n* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971). The commission's decision is supported by substantial evidence.

All eight teachers presented evidence that they were active members of the association whose involvement was known to Gorman or members of the school committee,[7] and that they had a generally good work record at the school.[8] Thus, each of these teachers established a prima facie case of unlawful antiunion discrimination by showing "that [he or she] had a generally good work record, that [he or she] had engaged in protected activity, and that this activity was plainly visible to the employer." *Trustees of Forbes Library* v. *Labor Relations Comm'n*, 384 Mass. 559, 565 n.4 (1981).

In rebuttal, Gorman testified that the district's actions were necessitated by declining enrollment, negative teacher attitudes, or an inability to maintain discipline.[9] "The commission has had the additional benefit of observing the witnesses before judging their credibility. It is not for this court to substitute its judgment on questions of fact for that

---

[7] All eight teachers picketed at school committee meetings and at the places of employment of school committee members. Stephen Yurek, Lorkiewicz, and McKeon were photographed while picketing. Stephen Yurek, Clark, and Mercier were reprimanded for distributing union leaflets at the open house. In addition, Stephen Yurek, Clark, Mercier, and Bourke were officers of the association.

[8] This evidence included formal teaching evaluations, the testimony of the superintendent, department chairmen, and other education officials.

[9] However, the district offered no explanation for its actions concerning Maryann Yurek. See 417, *supra*.

of the agency." *Olde Towne Liquor Store, Inc.* v. *Alcoholic Beverages Control Comm'n*, 372 Mass. 152, 154 (1977). *Duato* v. *Commissioner of Pub. Welfare*, 359 Mass. 635, 641 (1971). The commission alone determines credibility.

Further, it is not fatal to the teachers' claims that only three of the seven members of the school committee made antiunion statements. See note 6, *supra.* We adhere "to the rule that adequate proof in civil and criminal cases may come from either direct or circumstantial evidence, or both. . . . The probative value of circumstantial evidence 'has never been seriously questioned,' . . . and the persuasive value of circumstantial evidence may exceed that of direct evidence. . . ." *Abraham* v. *Woburn*, 383 Mass. 724, 729 (1981), quoting *Commonwealth* v. *Montecalvo*, 367 Mass. 46, 54 (1975), and cases cited. See P.J. Liacos, Massachusetts Evidence 407 (5th ed. 1981). The record is replete with antiunion animus. See, e.g., note 1, second par., and note 6, *supra.* Thus, the commission's findings are well-supported by the record.

3. *Authority to direct the school committee to reinstate a teacher even if reinstatement results in tenure.* The district also claims that G. L. c. 150E, § 11, does not authorize the commission to order the school committee to hire a teacher. The district argues that pursuant to G. L. c. 71, §§ 41, 42, a school committee may decide not to rehire any nontenured teacher for any reason as long as they notify the teacher of their decision by April 15. See *Bonar* v. *Boston*, 369 Mass. 579 (1976); *DeCanio* v. *School Comm. of Boston*, 358 Mass. 116 (1970). In failing to reappoint all the nontenured teachers at issue in this case except Stephen Yurek, the school committee says that it merely exercised its authority under G. L. c. 71, §§ 41, 42. The district asserts that G. L. c. 150E, § 11, does not give the commission the power to override the school committee's authority under G. L. c. 71, §§ 41, 42. The Appeals Court concluded that the commission has the power to order the reinstatement of a nontenured teacher even if reinstatement means that the teacher will attain tenure. *Southern Worcester County Regional*

*Vocational School Dist.* v. *Labor Relations Comm'n*, 12 Mass. App. Ct. 189, 199-200 (1981). See note 2, *supra.*

We are in substantial agreement with the conclusion of the Appeals Court. Under G. L. c. 150E, § 2, public employees have the right to form, join and assist unions and to engage in lawful, concerted activity. General Laws c. 150E, § 10, as amended by St. 1974, c. 589, § 2, makes it a prohibited practice for a public employer to "[i]nterfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter" or to "[d]iscriminate in regard to hiring, tenure, or any term or condition of employment to encourage or discourage membership in any employee organization." These provisions limit the power of a school committee to refuse to renew the employment of a nontenured teacher. Cf. *Muskego-Norway Consol. Schools Joint School Dist. No. 9* v. *Wisconsin Employment Relations Bd.*, 35 Wis. 2d 540 (1967). A failure to rehire a nontenured teacher because of a discriminatory motive has the same effect as an illegal dismissal. Any action by an employer "which results in a cessation of an employee's employment is unlawful if the employer's motive . . . is to discourage union membership or activity, or in reprisal or retaliation for the latter activities." *Mid-Plains Educ. Ass'n* v. *Mid-Plains Neb. Technical College*, 189 Neb. 37, 40 (1972). See Annot., 83 A.L.R.2d 532 (1962).

Pursuant to G. L. c. 150E, § 11, the commission may order the reinstatement of a teacher who has been discriminated against for engaging in union activity, or take other affirmative action. Under § 11, the commission may order a school committee to rehire a nontenured teacher. See, e.g., *Indiana Educ. Employment Relations Bd.* v. *School Trustees of the Worthington-Jefferson Consol. School Corp.*, 171 Ind. App. 79 (1976). Otherwise, a school committee could refuse to rehire nontenured teachers who engage in union activity and effectively discourage the exercise of protected rights. *Board of Educ., Central School Dist. No. 1* v. *Helsby*, 37 App. Div. 2d 493, 497-498 (N.Y. 1971).

386 Mass. 414                                    423

Southern Worcester County Reg. Vocational School Dist. v. Labor Relations Comm'n.

The district asserts that even if the commission has the authority to order a school committee to rehire a nontenured teacher, the commission may not order a school committee to grant tenure to a nontenured teacher. Relying on *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 112-114 (1977), *Dennis-Yarmouth Regional School Comm.* v. *Dennis Teachers Ass'n*, 372 Mass. 116, 117, 120 (1977), and *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Ass'n*, 372 Mass. 121, 122, 125-126 (1977), the district argues that only the school committee can decide to grant tenure.

In *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 111 (1977), we said that a school committee may not against its will "delegate to an arbitrator its authority to make decisions concerning tenure." Such delegation impermissibly intrudes on the school committee's traditional authority over tenure. However, in this case, the school committee has not attempted to delegate its authority over tenure to the commission. Rather, the Legislature has limited the power of a school committee to deny tenure. We therefore conclude that the nondelegability doctrine of *School Comm. of Danvers* v. *Tyman, supra,* does not apply to this case.[10]

Since the denial of tenure on account of union activity is unlawful, the commission's power necessarily includes the power to direct a school committee to reinstate a teacher even if reinstatement results in tenure. We reject the district's argument that the commission should never enter an order that results in tenure. If the district's argument were accepted, unlawful antiunion discrimination in tenure decisions would never be subject to redress. This is a result

---

[10] Moreover, since our decision in *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106 (1977), we have limited the nondelegability doctrine. In *Blue Hills Regional Dist. School Comm.* v. *Flight*, 383 Mass. 642 (1981), we upheld the decision of an arbitrator who ordered the promotion of a teacher who had suffered sex discrimination. "Denial of promotion to a public employee because of her sex is constitutionally impermissible and violates statutory proscriptions, and makes appropriate an order granting the promotion with back pay." *Id.* at 644. We believe that the denial of tenure on account of union activity is equally unlawful.

we decline to reach.  Cf. *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 230 (1978).

We therefore affirm the judgment of the Superior Court, upholding the commission's finding that the district's actions were motivated by unlawful antiunion sentiments and ordering that the teachers be reinstated with back pay and without prejudice to the teachers' seniority and tenure rights.[11]

*Judgment affirmed.*

---

[11] If the parties cannot agree on the amount of back pay, if any, that each teacher should receive, they may return to the commission to resolve this issue.  In that event, the commission should keep in mind that the doctrine of mitigation of damages applies to back pay awards.  See *Phelps Dodge Corp.* v. *NLRB*, 313 U.S. 177, 197-200 (1941); *NLRB* v. *Pilot Freight Carriers, Inc.*, 604 F.2d 375, 377 (5th Cir. 1979); *NLRB* v. *Mercy Peninsula Ambulance Serv., Inc.*, 589 F.2d 1014, 1017-1018 (9th Cir. 1979).  However, in formulating its back pay award, the commission should not penalize the teachers for its own delay.  Cf. *NLRB* v. *J.H. Rutter-Rex Mfg. Co.*, 396 U.S. 258 (1969); *Pacemaker Corp.* v. *NLRB*, 260 F.2d 880, 883 (7th Cir. 1958); *Triplex Screw Co.* v. *NLRB*, 117 F.2d 858, 862 (6th Cir. 1941); *NLRB* v. *Wilson Line, Inc.*, 122 F.2d 809, 815-816 (3d Cir. 1941).  See also *Safeway Trails, Inc.* v. *NLRB*, 641 F.2d 930, 934 (D.C. Cir. 1979), cert. denied, 444 U.S. 1072 (1980).  The fact that some of the teachers granted reinstatement have been replaced does not alter this result.  Cf. *NLRB* v. *Remington Rand, Inc.*, 94 F.2d 862, 871 (2d Cir. 1938) (L. Hand, J.).