Donohue, J.
Plaintiff, a single mother and welfare recipient, received $5,155.97 in proceeds from a personal injury lawsuit settlement on November 17,1994. As a result, the Department of Transitional Assistance (“Department”) disqualified plaintiff and her child from Aid to Families with Dependent Children (“AFDC”) benefits for a ten-month period. The Department’s decision was affirmed on administrative appeal. Plaintiff now appeals to this court pursuant to G.L.c. 30A §14. For the reasons stated below, the Department’s decision is VACATED.
*323 BACKGROUND
Plaintiff claims that she borrowed $4,308 from her mother to pay for living expenses while awaiting the settlement. Specifically, plaintiff claims that she borrowed $2,750 from her mother to pay off credit card debt which she incurred for living expenses. Plaintiff also claims that she was indebted to her mother for the remainder of the $4,308 ($1558) because her mother had provided for other living expenses for plaintiff and her child prior to the settlement. Plaintiff further claims that she thereafter transferred $4,308 of the $5,155.97 from the settlement to her mother in repayment. Plaintiff argues that this amount should have been excluded from the Department’s calculation of her “lump sum” income, used to determine her period of AFDC ineligibility pursuant to 106 CMR 304.240(B)(6).[2] Defendant claims that the amount was properly included because plaintiffs alleged debt was: 1) in part ($2750) not properly verified as coming from expenditures for living expenses[3] and 2) in part (the $1558) not true debt since it arose from a gift not a loan.
In support of her claim that $4,308 was used to repay a loan from her mother, plaintiff submitted a note written by her mother. The note states that plaintiffs mother advanced plaintiff $2,750 to pay a Mastercard bill, as well as $1,558 for various expenses, and that plaintiff repaid the total $4,308 upon receiving the settlement. Plaintiff offered the following analysis of the expenses. The $2,750 credit card debt broke down to 1) $1,200 (in cash advances) in child care expenses (paid to plaintiffs sister); 2) $500 in medicine charges; 3) $400 in cab fare (to the doctor’s office) charges; 4) $500 in charges for clothes, diapers and food; and 5) $150 in interest. The $1,558 which plaintiffs mother expended for plaintiffs expenses comprised of 1) $800 for moving expenses; 2) $138 for an oil bill; 3) $120 for clothing; and, 4) $500 for food, clothing and diapers.
The hearing officer found that the $2,750 was used to repay plaintiffs mother for her loan to plaintiff to pay her credit card bill, and that the $1,558 was a gift rather than a debt (and thus not excludable from the “lump sum”). Therefore he analyzed only the $2,750 for proper verification.
The hearing officer examined plaintiffs verification of her Mastercard charges and found it to be insufficient. Specifically the hearing officer did not find credible plaintiffs cláim that she took a credit card advance to pay her sister for child care services: “it is not reasonable to believe that the [plaintiffs] sister would require the [plaintiff] to go into debt to pay for her babysitting services." The hearing officer also noted a discrepancy between a letter submitted by plaintiffs sister acknowledging receipt of $960 for babysitting services as opposed to the $1200 plaintiff claims she paid.
The hearing officer also found verification for the remaining amount of the Mastercard debt insufficient. Specifically, he found that there were no receipts or Mastercard statements for these items, but rather a statement by the plaintiff which insufficiently specified the expenses and to whom they were paid. Finally the hearing officer found that the $150 paid for interest is not a day-to-day living expense and must therefore be used to reduce plaintiffs income.
DISCUSSION
The court may review the administrative agency’s decision, and either affirm, reverse, remand, compel action, or modify it if the court determines that “the substantial rights of any party may have been prejudiced because the agency’s decision is . . . [unsupported by substantial evidence.” G.L.c. 30A §14(7)(e). “Substantial evidence” is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” Robinson’s Case, 416 Mass. 454, 456 (1993) (citing G.L.c. 30A §1 (6)).
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies & Bds., 27 Mass.App.Ct. 470, 474 (1989); Faith Assembly of God v. State Bldg. Code Comm’n, 11 Mass.App.Ct. 333, 334 (1981), citing Almeida Bus Lines, Inc. v. Department of Pub. Utils., 348 Mass. 331, 342 (1965). In reviewing the agency decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n, 401 Mass. 713, 721 (1988); Quincy City Hosp. v. Labor Relations Comm’n, 400 Mass. 745, 748-49 (1987). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n, 386 Mass. 414, 420-21 (1982) citing Olde Towne Liquor Store, Inc., v. Alcoholic Beverages Comm'n, 372 Mass. 152, 154 (1977). A court may not dispute an administrative agency’s choice between two conflicting views even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesley v. Housing Appeals Comm’n, 385 Mass. 651, 657 (1982).
1. The $2,750 Mastercard Debt
The hearing officer properly included $1400 in plaintiffs lump sum income from the settlement. Plaintiff was unable to provide receipts, Mastercard statements or the identity of the person or entity to whom the payments were made for the alleged $500 in medicine charges, $400 in cab fare charges, and $500 in clothes, food and diaper charges pursuant to 106 CMR 304.240(G)(e). Therefore the court finds that the hearing officer’s decision as to the $1400 was *324 proper in every respect and supported by substantial evidence.
With regard to the alleged $1200 in cash advances for child care payments to plaintiffs sister, the court finds that the hearing officer should properly have included only the $240 which was undocumented in her lump sum (i.e., the difference between the $960 for which plaintiffs sister provided receipts and plaintiffs claimed $1200 in expenditures). The hearing officer’s conclusion that “it is not reasonable to believe that the [plaintiffs] sister would require the [plaintiff] to go into debt to pay for her babysitting services” is not supported by any evidence, much less “substantial evidence.” G.L.c. 30A §14(7)(e). Mindful that the court may not substitute its judgment for the hearing officer’s, Southern Worcester County Regional Vocational School District, 386 Mass. at 420-21, the court finds that without any evidence whatsoever that such services were gratuitous the hearing officer’s conclusion cannot stand. Therefore, $960 of the $1,200 should have been excluded.
Finally, the court finds that interest charges for “back bills resulting from the costs of day-to-day living expenses” are inherently part of the excludable amount from the lump sum. 106 CMR 304.240(B)(6). If one is forced to borrow to pay for living expenses, it is difficult to fathom a method of doing so without incurring interest charges. It follows that when such interest is incurred to cover “day-to-day living expenses” while awaiting the lump sum it falls squarely within the definition of “back bills,” and is excludable. However most of the $150 in interest charges were properly not excludable because, presumably, the interest was calculated on the full amount of the charges, not just the verified portion. Therefore only the interest paid for the verified $960 for child care is excludable.
2. The $1,558
The hearing officer’s dismissal of the $1,558 which plaintiffs mother expended for plaintiff as a “gift” rather than a loan, is not supported by substantial evidence. G.L.c. 30A(7)(e). In fact the only evidence presented at the hearing indicated the amount was a loan (i.e., plaintiffs mother’s affidavit). Again, the court does not replace its judgment for the hearing officer’s. However without any evidence of a gift, and with evidence that plaintiffs mother indeed loaned plaintiff this amount (as well as the $2,750 discussed supra), the court finds that the hearing officer’s decision was not supported by substantial evidence and was therefore improper.
However, the only items for which there is proper verification are the $ 138 oil bill and the $800 in moving expenses. Defendant argues that verification is improper for all of the items, including the oil bill because the receipt therefore is in plaintiffs name. Defendant also argues that the $800 in moving expenses does not constitute a “day-to-day living expense.” Nonetheless the court finds plaintiffs oil and moving expenses to be “day-to-day living expenses” and properly verified. First, simply because plaintiffs name is on the receipt for the oil bill does not mean plaintiffs mother did not pay it. Plaintiffs mother may have sent plaintiff the money for her to forward to the oil company. Or plaintiffs name may be on the receipt simply because hers is the name of record for billing purposes. Finally there is no reason why moving expenses should not come within the definition of “shelter” under the regulations. Therefore, $938 of the $1,558 should have been excluded.
ORDER
For the above reasons, the Department’s decision is VACATED. It is further ORDERED that the case be REMANDED to the Department for recalculation of plaintiffs AFDC ineligibility period in accordance with the above findings.

 106 CMR 304.240(B)(6) provides for exclusion of certain types of income including ”[a]ny portion of the lump sum income that can be verified as having been used to pay for back bills resulting from the costs of day-to-day living expenses incurred while awaiting the receipt of the lump sum income. For purposes of this Subsection, day-to-day living expenses of the assistance unit shall include such costs as shelter, fuel utilities, food, clothing, essential furniture and appliances, transportation, and health, education and employment related expenses.”

 Verification of living expenses is governed by 106 CMR 304.240(G)(e) which provides: “verification shall include (1) receipts for payment of the day-to-day living expenses; and/or (2) written statements from the person or entity to whom the payment was made for such day-to-day living expenses; or (3) if receipts or the statements are unavailable for some of the day-to-day living expenses a combination of (1), (2) and a written statement from a member of the assistance unit specifying the type(s) of day-to-day living expenses, the amount paid the person or entity to whom paid, and the approximate date of such payment."