TOWN OF BURLINGTON vs. LABOR RELATIONS COMMISSION.

Middlesex.   May 7, 1981. — July 1, 1981.

Present: GREANEY, CUTTER, & KASS, JJ.

*Labor,* Unfair labor practice. *Municipal Corporations,* Unfair labor
practice.

Evidence that a town's selectmen, immediately on learning that a union
had filed a petition for certification as the exclusive bargaining agent
for the town's traffic supervisors, voted an order which constituted a
reduction in pay for the traffic supervisors and that, after rescinding
the order on the advice of town counsel, the selectmen discovered and
decided to enforce for the first time a town by-law adopted two years
earlier which also had the effect of reducing the pay of traffic super-
visors supported a finding by the Labor Relations Commission that the
selectmen's decision to enforce the by-law was retaliatory and consti-
tuted an unfair labor practice under G. L. c. 150E, § 10(a)(1) and
(a)(3).  [186-188]

CIVIL ACTION commenced in the Superior Court Depart-
ment on November 20, 1978.

The case was heard by *Young, J.,* on motions for sum-
mary judgment.

*David Berman,* Town Counsel, for the plaintiff.
*Robert M. Schwartz* for the defendant.

KASS, J.  In October, 1976, the American Federation of
State, County and Municipal Employees, AFL-CIO (the
union), petitioned the Labor Relations Commission (com-
mission) for certification as the exclusive bargaining agent
for the traffic supervisors in Burlington.[1]  The selectmen of
Burlington reacted with some ire and voted an order — "ef-
fective immediately" — that traffic supervisors should work

---

[1] Traffic supervisors direct traffic at school crossings during the times of
day when children are on the way to, or back from, school.

no more than five hours per day and should not be on the town's payroll on any day when the schools were closed. That order constituted a reduction in pay because, since 1971, the traffic supervisors had been paid on the basis of a forty-two week year (the school year runs between thirty-eight and thirty-nine weeks) and an assumed fifteen hours per week, without deductions for holidays, snow days or any other event which might cause the school not to be open.

There is no dispute between the parties that this cutback in hours hard on the heels of union activity constituted a prohibited practice for a public employer under G. L. c. 150E, § 10(a)(1) and (3). See *National Labor Relations Bd.* v. *Exchange Parts Co.*, 375 U.S. 405, 409 (1964); *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Commn.*, 377 Mass. 847, 850 (1979); *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 904-905 (1979); *School Comm. of Stoughton* v. *Labor Relations Commn.*, 4 Mass. App. Ct. 262, 269-270 (1976). Indeed, as soon as he was consulted, Burlington's town counsel recommended that the selectmen rescind their order, and they did so. In the course of his inquiry into the matter, however, town counsel discovered that the town meeting had in 1974 adopted a by-law relating to part-time employees which appeared to limit them to compensation for time actually spent on the job. Awakened to the existence of the 1974 by-law, the selectmen were pleased to don the mantle of statutory duty in order to do what they wanted to do all along: cut the hours for which traffic supervisors would be paid. The commission was not persuaded that the selectmen's action was anything other than retaliatory, so found, and ordered among other things that the traffic supervisors be paid prospectively and retroactively on the basis of the old formula. From that order the town appealed pursuant to G. L. c. 30A, § 14. No material subsidiary facts were in dispute, and upon cross motions for summary judgment, a Superior Court judge affirmed the decision of the commission.

The town, on this appeal,[2] argues that it has no alternative to enforcement of its laws and that such retaliatory motives as the selectmen may have had are simply not relevant. In contending that the town has a duty to administer a particular law irrespective of a past history of nonenforcement, the town is on reasonably well-established ground. *Scola* v. *Scola*, 318 Mass. 1, 7 (1945). *Mayor of Haverhill* v. *Water Commrs. of Haverhill*, 320 Mass. 63, 70 (1946). Cf. *Doherty* v. *Woburn*, 345 Mass. 523, 528 (1963). *Murphy* v. *McKenzie*, 1 Mass. App. Ct. 553, 559 (1973). But the duty to apply the law carries with it the duty to apply the law impartially.[3] When it appears, therefore, that a statute or regulation is enforced in aid of an ulterior and forbidden purpose, courts have rejected the "slave of duty" defense. So, for example, in *National Labor Relations Bd.* v. *Harris*, 200 F.2d 656, 659 (5th Cir. 1953), the grant of wage increases required by the Fair Labor Standards Act was, in the context of a labor dispute, held to be an unfair labor practice. By analogy, in *Nash* v. *Florida Industrial Commn.*, 389 U.S. 235, 239-240 (1967), it was held that enforcement of a Florida unemployment compensation statute in a manner which appeared to punish an employee for filing a claim of unfair labor practice in and of itself constituted an unfair labor practice proscribed by the paramount provisions of the National Labor Relations Act, 29 U.S.C. § 151 et seq. (1976). See *Murgia* v. *Municipal Court*, 15 Cal. 3d 286, 297, 302 (1975). In the instant case,

---

[2] As to factual issues, our standard of review is the "substantial evidence test." See *Labor Relations Commn.* v. *Everett*, 7 Mass. App. Ct. 826, 827-829 (1979). In applying that test we consider the "experience, technical competence, and specialized knowledge of the agency." *Selectmen of Marion* v. *Labor Relations Commn.*, 7 Mass. App. Ct. 360, 361 (1979). See also as to the scope of review, *Labor Relations Commn.* v. *University Hosp., Inc.*, 359 Mass. 516, 521 (1971); *School Comm. of Boston* v. *Board of Educ.*, 363 Mass. 125, 128-129 (1973); *Southern Worcester County Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. 897, 903 (1979).

[3] See *Commonwealth* v. *King*, 374 Mass. 5, 20 (1977); Vorenberg, Decent Restraint of Prosecutorial Power, 94 Harv. L. Rev. 1521, 1521 n. 1 (1981).

the requirements of G. L. c. 150E, § 10, are paramount to the Burlington by-law[4] in circumstances where they come into collision.

What motive underlies enforcement of a statute, therefore, takes on relevance in unfair labor practice cases because it provides the key to whether the conduct complained of was in the ordinary course or provoked by anti-union animus. See *National Labor Relations Bd.* v. *Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45-46 (1937); *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Commn.*, 377 Mass. at 851; *National Labor Relations Bd.* v. *Gotham Indus., Inc.*, 406 F.2d 1306, 1309 (1st Cir. 1969). See generally Christensen & Svanoe, Motive and Intent in the Commission of Unfair Labor Practices: The Supreme Court and the Fictive Formality, 77 Yale L.J. 1269 (1968). The timing of the town's action as to the traffic supervisors' pay was substantial evidence from which the commission's hearing officer could and did draw an inference of retaliatory motivation. See *Southern Worcester Regional Vocational Sch. Dist.* v. *Labor Relations Commn.*, 377 Mass. at 904; *Labor Relations Commn.* v. *Blue Hill Spring Water Co.*, 11 Mass. App. Ct. 50, 62-63 (1980). In such circumstances, we defer to the commission's fact-finding role. *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 132-133 (1976). *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 224 (1978). The only evidence of proper independent purpose offered by the town to rebut the union's prima facie case on the issue of improper motive is that the selectmen prudently followed the advice of counsel. But that advice was solicited and received only after the selectmen had engaged in their first act of reprisal; it was too late for them then to ex-

---

[4] The inconsistency of the Burlington by-law with a forty-two week payment basis for traffic supervisors does not strike us as self-evident, but since the case was briefed and argued on the basis that the by-law mandated the pay cut, we have considered the case on that assumption.

plain that they labored under compulsion of law.[5]  As the trial judge observed, public action, "albeit wholly legal in form, may be set aside if discriminatory in substance and intent."

*Judgment affirmed.*

---

[5] We do not intimate that the town is to be unreasonably or forever foreclosed from applying its by-law, at least after the labor dispute has subsided.