TOWN OF LEE *vs.* LABOR RELATIONS COMMISSION.

Suffolk. October 15, 1985. — December 2, 1985.

Present: WARNER, KAPLAN, & FINE, JJ.

*Labor*, Collective bargaining. *Municipal Corporations*, Collective bargaining, Police. *Police*, Collective bargaining.

A town by-law stating in part, "A citizen of the town qualified under the General Laws applicable to Police Departments in towns under civil service shall be eligible for membership in the Police Department," even if interpreted as requiring police officers to reside in the town, would not relieve the town of its duty to bargain collectively in good faith with the police union before imposing a residency requirement for police officers. [167]

Evidence before the Labor Relations Commission warranted its finding that a town's action in requiring a police officer to reside in the town as a condition of continued employment was a departure from past practice. [167-169]

APPEAL from an order of the Labor Relations Commission.

*Jerome J. Scully,* Town Counsel, for the plaintiff.

*Margery Williams* for the defendant.

KAPLAN, J. In January, 1983, the board of selectmen of the town of Lee, the appointing authority, refused to permit a full-time, permanent police officer, Jeffrey Gamelli, to change his residence from Lee to the nearby town of Becket, on pain, if he did so, of forfeiting his job. Claiming that this represented a new or changed policy on the part of the town with respect to residency, the Lee Police Association (union), the relevant exclusive bargaining representative,[1] requested negotiation, which the town in effect refused. The union on April 22, 1983, filed a charge of prohibited practice with the Labor Relations Commission (commission), citing G. L. c. 150E, § 10(*a*)(5), refusal to bargain collectively in good faith.[2]

---

[1] It represented all full-time civil service appointed police officers in Lee.

[2] Also implicated in such a case is § 10 (*a*)(1), interference with any employee in the exercise of rights under the statute.

After investigation, the commission issued its complaint; an expedited hearing followed; and the hearing officer found that the charge was substantiated. The commission affirmed this conclusion. On the town's appeal, we affirm the commission's ensuing order.

Since 1954, Lee has had on its books a by-law (Appendix C, § 1) which states in part: "A citizen of the town qualified under the General Laws applicable to Police Departments in towns under civil service shall be eligible for membership in the Police Department." Even if one assumes that the by-law, properly interpreted, speaks to the facts of Gamelli's case (a question to which we shall return), it would not obviate the claim of prohibited practice. For in the present context residency is among the "terms and conditions of employment" of G. L. c. 150E, § 6, inserted by St. 1973, c. 1078, § 2, and is thus a mandatory subject of bargaining.[3] According to § 7(*d*), as appearing in St. 1977, c. 278, § 4, when a collective bargaining agreement contains a provision with regard to a § 6 subject that conflicts with "any municipal personnel ordinance, by-law, rule, or regulation," that provision of the agreement prevails. See *Labor Relations Commn.* v. *Natick,* 369 Mass. 431, 437 (1976). And it has been held to follow as a matter of logic that if a going collective agreement contains no provision about a particular § 6 subject (in the case at bar, the 1982-1983 collective agreement said nothing about residency), and a municipal employer inaugurates or alters a policy or requirement with respect to that subject, it is bound upon request to bargain — and this, regardless of any by-law (or ordinance, etc.) in point. See *id.* at 438; *School Comm. of Newton* v. *Labor Relations Commn.,* 388 Mass. 557, 567-568 (1983).

So all that is left for consideration on this appeal is whether there was substantial evidence supporting the commission's finding that the treatment of Officer Gamelli's residency was a fresh departure for the town of Lee. Vain is the town's effort

---

[3] See *Boston Sch. Comm.,* 3 M.L.C. 1603 (1977); *City of Springfield,* 4 M.L.C. 1517 (1978); *City of Worcester,* 5 M.L.C. 1414 (1979). We deal here with residence as a condition of continued employment, not merely as a condition of hire. Compare *Boston Sch. Comm.* at 1608; *City of Worcester,* at 1415.

simply to insist on decisions that suggest, as a general propo-
sition, that a municipality does not lose the right to enforce a
by-law for the future simply because it failed to enforce it for
a period of time in the past. See, e.g., *Doris* v. *Police Commr.
of Boston*, 374 Mass. 443, 449 (1978). The by-law would
yield to the town's breach of its duty to bargain under § 6,
just as it would to the town's use of the by-law for a retributive
or discriminatory purpose outlawed by § 10(*a*)(4). See *ibid.*;
*Burlington* v. *Labor Relations Commn.*, 12 Mass. App. Ct.
184, 186 (1981).[4]

Turning, then, to the record before the commission, we
note, first, that if members of the police force adverted to the
by-law,[5] they might well understand it to deal with residence
in the town (equated with "citizenship") as a condition of hiring
(eligibility), rather than as a condition of continued employ-
ment. Further, the town had made no effort to inform the body
of police officers, or individual officers, about any residency
requirement. In this connection, the evidence showed that the
town sought lists from civil service on a basis of giving prefer-
ence to candidates who resided in Lee, not requiring such
residence; and candidates were likely aware of this.

As to the actual practice in Lee, there could be no massive
evidence, since the total force in any given year would not
exceed eight, turnover was not substantial (only four persons
had been hired since 1978), and test cases would be rare because
officers, by and large, would naturally choose to live in the
town they served. Three cases, however, could be cited.[6] Of-
ficer John Winters (a vice president of the union), who testified
before the hearing officer, began as a provisional civil service
appointee and worked as such full time three or four years

---

[4] As indicated in the *Burlington* case (at 188 n.5), the by-law is not
permanently nullified; it may be merely suspended until the labor dispute
subsides.

[5] Appendix C consists of "Police Department Rules and Regulations." It
contains some ninety sections. The section referring to "[a] citizen of the
town" and so forth appears in the section of Appendix C entitled "Duties
of Chief of Police."

[6] See *City of Everett*, 8 M.L.C. 1393 (1981), referring to a "consistent,
if sporadic, practice."

while residing outside Lee. He moved to Lee in 1975 (when he was divorced) and then received permanent appointment. While nonresident he kept the department informed of his address and received calls there from time to time connected with his duty. Officer Winters recalled two other cases. Officer Stephen Smith served full time for two years as a provisional civil service appointee while residing outside Lee. He left the service before attaining permanency. Officer Leon Litchfield served several years as a permanent civil service appointee; he resided in Lee during these years, but moved outside (upon divorce) shortly before he died. We need to add that no case was brought forward, such as Gamelli's, where the town refused to allow an officer to live outside the town. The town has pointed to the fact that in two of the cited cases the officers were provisional employees while nonresident; but the by-law does not distinguish between provisional and permanent employees. See also G. L. c. 150E, § 1 (defining "employee"), and *School Comm. of Newton*, 388 Mass. at 563. In the third case, the officer became nonresident while a permanent employee.

On the whole we cannot say there was a lack of "substantial evidence" (as defined in G. L. c. 30A, § 1[6], inserted by St. 1954, c. 681, § 1)[7] that the town's handling of Officer Gamelli represented a departure of policy or practice — one which in law invoked a duty to bargain. We are to remember that the agency's expertness in assessing facts in the labor field is entitled to respect; "[o]ur role does not include second-guessing an administrative agency." *School Comm. of Newton*, 388 Mass. at 560.

The town does not argue that the commission's order is defective if its decision is correct on the merits.

*Order affirmed.*

---

[7] "'Substantial evidence' means such evidence as a reasonable mind might accept as adequate to support a conclusion."