CITY OF SOMERVILLE vs. SOMERVILLE MUNICIPAL
EMPLOYEES ASSOCIATION.

Middlesex. April 7, 1994. - May 31, 1994.

Present: ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Arbitration*, Authority of arbitrator, Collective bargaining, Judicial review.
*Labor*, Arbitration, Public employment, Collective bargaining, Wages.
*Public Employment*, Collective bargaining, Salary. *Municipal Corpo-
rations*, Collective bargaining, Municipal finance, Mayor.

In an action seeking review of an arbitrator's award, the judge correctly
concluded that a municipal board of aldermen had not appropriated
money for salary increases under a union contract and, accordingly,
ruled correctly that the arbitrator had exceeded his authority in order-
ing the municipality to pay the salary increases [24-26]; the union's
remedy in the circumstances was to seek a court order compelling the
executive arm of the municipality to submit the cost items to the board
or to return to the bargaining table [26-27].

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 11, 1992.

The case was heard by *Judith A. Cowin*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Alan J. McDonald* for the defendant.

*John M. Carey* (*John Foskett* with him) for the plaintiff.

LYNCH, J. Somerville Municipal Employees Association
(union) appeals from a judgment of a Superior Court judge
vacating an arbitration award which obligated the city of
Somerville (city) to pay salary increases to members of the
bargaining unit of the union. The union filed a timely notice
of appeal and we granted its application for direct appellate
review. We affirm.

The judge relied on the following undisputed facts. The
collective bargaining agreement between the city and the

union expired on June 30, 1990. On February 12, 1991, the parties executed a "Supplemental Settlement Agreement" (agreement) to cover the two-year period extending from July 1, 1990, through June 30, 1992.[1] The agreement provided that the wages and salaries of the union members would remain unchanged from the fiscal year 1990 (FY 1990) rate for the first fiscal year of the agreement (FY 1991), but that a three per cent wage increase and a three per cent step increase would become effective at the outset of the second fiscal year (FY 1992). The union ratified the agreement on February 26, 1991.

Because the first year of the contract required no additional appropriations, the mayor did not submit an appropriation request to the board of aldermen (board).[2] In March of 1991, the union counsel sought confirmation from the mayor that the city would honor the contract, writing: "Unless I hear from you to the contrary, I will assume that the City agrees that the Unit B contract is valid and binding without its referral to the Board of Alderm[e]n. . . ." [T]he city responded: "The Mayor, as Chief Executive Officer under General laws Chapter 150E, Section 1, assumes that the Unit B contract is valid and binding without its referral to the board of Alderm[e]n." In June of 1991, however, counsel for the city made known the city's view that the second year of the contract was not valid and binding without a sufficient appropriation by the board.

The mayor included the salary increases when he submitted his FY 1992 budget. He incorporated the amount for the increases into the "personal services" item of each department and segregated the increases from the base salary cate-

[1]The agreement incorporated a prior collective bargaining agreement known as the "Unit B Settlement."

[2]General Laws c. 150E, § 7 (b), as amended through St. 1991, c. 142, § 26, provides: "The employer . . . shall submit to the appropriate legislative body within thirty days after the date on which the agreement is executed by the parties, a request for an appropriation necessary to fund the cost items contained therein . . . . If the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining."

gory, thereby making the increases readily identifiable.[3] The city did not pay the increases for FY 1992.[4]

The union filed a grievance which was denied and the matter was subsequently submitted to arbitration. The arbitrator decided that:

"1. The grievance contesting the City's failure to pay wage and step increases for fiscal year 1992 is substantively arbitrable.

"2. The City violated the collective bargaining agreement by failing to implement paragraphs 8(b) and 8(c) of the 'Unit B Settlement Agreement' dated January 8, 1991.

"3. The employees entitled to the benefits of Sections 8(b) and 8(c) of the 'Unit B Settlement Agreement' shall be paid as required therein forthwith and shall be made whole for loss of pay and step increases plus statutory interest retroactive to July 1, 1991."

The judge vacated the arbitration award ruling that there was no appropriation as required by statute, and that the arbitrator had exceeded his authority by ordering the city to pay the increases.

---

[3]In his accompanying letter to the board, the mayor reported, among other things, that, due to the combination of reduced available revenues and increased fixed costs, eleven police officers, two police department civilians, twenty-four firefighters, forty-two department of public works employees, approximately 125 school department employees, and many other employees would be laid off for a total of over 275 layoffs.

[4]In its recommendations for reductions, the committee on finance included the full amount allotted in the mayor's budget for raises. The committee also passed a resolution that stated:

"RESOLVED, That the Board of Aldermen, by unanimous consent, resolves that the monies recaptured from the Board's refusal to fund negotiated pay raises and reserve for appropriation be restored to the Department from which it was taken and be used to fund or re-hire personnel cut from that Department's FY 1992 Budget."

"The role of courts in reviewing an arbitrator's award is limited." *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187 (1984). See G. L. c. 150C, § 11 (1992 ed.). Where an arbitrator has exceeded his authority, however, his conduct is always open to judicial review. See G. L. c. 150C, § 11 (*a*) (3); *Local 589, Amalgamated Transit Union* v. *Massachusetts Bay Transp. Auth.*, 392 Mass. 407, 410-411 (1984). "Those portions of an arbitrator's award which exceed the arbitrator's authority are void and may be vacated by a court." *Id.* at 411.

It is well established that "an arbitrator acts in excess of his authority if damages are awarded for the breach of a provision in a collective bargaining agreement when, at the time of the breach, no funds had been appropriated to implement that provision." *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 395 Mass. 232, 236 (1985).[5] The public employment practices of the Commonwealth require both legislative and executive action to fund collective bargaining agreements. *Alliance, AFSCME/SEIU* v. *Secretary of Admin.*, 413 Mass. 377, 382 (1992). "The unions, therefore, cannot prevail in the absence of a valid appropriation." *Id.*

The union argues that the board made an appropriation for the salary increases. "To appropriate money, or anything else, is to set it apart or assign it to a particular use or purpose." *Kelley* v. *Sullivan*, 201 Mass. 34, 35-36 (1909). The board "by majority vote [may] make appropriations for the purposes recommended [by the mayor] and may reduce or reject amounts recommended in the annual budget." G. L. c.

---

[5]One exception to this general rule is where we have held that an appropriation funding the first year of a three-year contract constitutes an approval by the legislative body of the entire agreement. *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 204 (1982). We held that G. L. c. 151E, § 7 (*b*), contemplates "an initial approval of the contract by the legislative body, followed by appropriations as a matter of course in the succeeding years of the contract." *Id.* at 204. On the facts before us the board never approved even the first year of the contract. Accordingly, *Boston Teachers Union, Local 66* is not controlling.

44, § 32 (1992 ed.). "It shall not increase any amount in or the total of the annual budget nor add thereto any amount for a purpose not included therein except on recommendation of the mayor, and except as provided in section thirty-three . . . ." *Id.*

The judge correctly ruled that "the Board never appropriated the funds for these increases." The board included the full amount of the salary increases in their recommended budget reductions. The union argues that, by labeling the reductions "recommended," the board did not specifically reject the increases. That interpretation is refuted, however, by a resolution passed by the board on the same evening as it passed the budget reductions. See note 4, *supra.* Therein the board specifically stated that they had refused to fund the salary increases. The resolution explains the board's intent when it voted to approve the recommended budget reductions. Moreover, both the mayor and the city auditor submitted affidavits averring that the board specifically rejected the negotiated salary increases. On this record the conclusion that the board did not appropriate the funds was correct. Accordingly, in the absence of an appropriation, the arbitrator exceeded his authority in ordering the city to pay the salary increases.

The union argues that the arbitrator drew contrary conclusions that the board did not reject the cost items for the salary increases, and that the board did appropriate sufficient funds. These findings, according to the union, are not subject to review by the courts. We turn to the city's contention that the arbitrator's award is unenforceable because it goes beyond the arbitrator's authority. When such a jurisdictional challenge is made, "judicial review of the award is independent." *Local 589, Amalgamated Transit Union, supra* at 411. The judge was correct not to defer to the arbitrator's interpretation of the board's conduct. *Id.* Similarly, we need not defer to the arbitrator in reviewing the judge's conclusion that the board did not appropriate the monies necessary to fund the increases. *Id.*

The union argues further that our decision will preclude the enforcement of multi-year collective bargaining agreements where the first year of the contract requires no additional appropriations. We do not agree. The union could have sought an order compelling the mayor to submit the cost items to the board in the first year. See *Billerica* v. *International Ass'n of Firefighters, Local 1495*, 415 Mass. 692, 696 (1993) (remedy when town administrator or others fail to comply with G. L. c. 150E, § 7 [*b*], is to seek court order compelling compliance with law). Conversely, the role of the legislative branch in the collective bargaining process cannot be eliminated by negotiating salary increases to take effect after the first year of the contract.

The union next argues that, even absent a specific appropriation covering the salary increases, the mayor could have funded the increases through the general departmental salary appropriations by laying off enough individuals within each department so that he could use those salaries to fund the increases. In support of its position the union cites *Fitchburg Teachers Ass'n* v. *School Comm. of Fitchburg*, 360 Mass. 105, 108 (1971) (*Fitchburg*).[6] *Fitchburg* is of no avail to the union. School committees are granted statutory authority "to determine expenditures within the total appropriation" and the city may not place any restrictions on the total appropriations other than nonbinding monetary recommendations. See G. L. c. 71, § 34 (1992 ed.). This court's holding in *Fitchburg* simply reflects the authority granted to the school committees by the Legislature.[7] By comparison, transfers of

---

[6] In *Fitchburg*, this court held that the lack of a specific appropriation for the purpose of paying amounts due is irrelevant as long as an order to pay the sums due to fund negotiated teacher salary adjustments would not exceed the school committee's total appropriation. The court stated: "The committee may use money allocated to the school as it sees fit even to the extent of diverting sums specifically allocated in the budget from one use to another." *Id.*

[7] The union cites several other cases: see *Norton Teachers Ass'n* v. *Norton*, 361 Mass. 150, 154-155 (1972); *Collins* v. *Boston*, 338 Mass. 704 (1959); *Lynch* v. *Fall River*, 336 Mass. 558 (1958); *Leonard* v. *School Comm. of Springfield*, 241 Mass. 325 (1922), involving school committees

appropriations in a city's budget, even for transfers between appropriations of separate items within the same department, require a recommendation by the mayor and approval by the city council. See G. L. c. 44, § 33B (1992 ed.). Thus, mayors do not have the same unrestricted control over appropriations as school committees have. The salary increases were separated by departments and were included in each department's salary line item. The only conceivable alternative open to the mayor to fund the increases was through reductions in each department's salaries (the same line item as the salary increases), which would require even more layoffs than the mayor had included in his budget proposal. The mayor was not contractually or otherwise obligated to increase layoffs in order to fund the salary increases not appropriated by the board.

The union points out that the money representing the salary increases remained in the budget somewhere and therefore money was available to fund the increases. This is demonstrated in part, the union asserts, by the fact that the board approved supplemental appropriations at a later date. The auditor attests that the money fell into the "free cash" category which, after a recommendation by the mayor, was later appropriated by the board for specific purposes, in large part fulfilling the resolutions of the board when it made its budget reduction recommendations. The union argues that the "free cash" monies were available to the mayor to fund the salary increases. General Laws c. 150E, § 7 (*b*), provides, however, that, "[i]f the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining." Even if the mayor had the authority independently to spend the "free cash," he had no obligation to fund the salary increases after the board had duly rejected the appropriation. The cost items should have been returned to the parties for further bargaining.

which are equally unavailing for the same reasons that *Fitchburg* is inapposite.

The judgment vacating the arbitration award is affirmed and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*