CITY OF BOSTON *vs.* BOSTON POLICE PATROLMEN'S
ASSOCIATION, INC., & another.[1]

No. 97-P-1884.

Suffolk. December 14, 1998. - October 13, 1999.

Present: ARMSTRONG, SMITH, & RAPOZA, JJ.

*Arbitration,* Authority of arbitrator, Collective bargaining, Police. *Indemnity.*
*Public Employment,* Police, Indemnification of employee, Collective
bargaining, Residence requirement.

A Superior Court judge correctly struck from an arbitrator's award two provi-
sions that would have divested the city of Boston of its discretionary
power under G. L. c. 258, § 9, to determine whether to indemnify police
officers for liability arising out of intentional torts or civil rights violations
in certain circumstances [75-77] and that would have granted certain
exemptions outside the bargaining unit from a requirement of residency in
the city as to all police officers thereafter hired [77-79], where the arbitra-
tor was without authority to grant those demands.

CIVIL ACTION commenced in the Superior Court Department on
June 24, 1994.

The case was heard by *Barbara J. Rouse,* J., on respective
motions to dismiss and for summary judgment.

*Joseph G. Sandulli* for Boston Police Patrolmen's Associa-
tion, Inc.

*John Foskett (Catherine S. Reidy* with him) for the plaintiff.

ARMSTRONG, J. After the expiration of a collective bargaining
agreement on June 30, 1990, the Boston Police Patrolmen's As-
sociation, Inc. (union), and the city (represented by corporation
counsel) bargained for several years to an impasse that was
broken when the joint labor-management committee ordered
arbitration of the then remaining differences. In arbitration, the
city contended that certain demands of the union were beyond

---

[1]Joint labor-management committee. See St. 1973, c. 1078, § 4A, as
amended by St. 1987, c. 589, § 1.

the arbitrator's power to grant. Two of these were granted by the arbitrator in his June, 1994, award. The city filed a petition to vacate those provisions, and the judge, correctly rejecting a motion to dismiss filed by the union, ordered both provisions struck from the award. The case is before us on the appeal of the union.

## INDEMNITY

The union sought a contract provision committing the city, mandatorily, to indemnify patrolmen to the extent permitted by G. L. c. 258, § 9: that is to say, up to one million dollars for liabilities arising out of intentional torts or civil rights violations so long as the violations were committed within the scope of their employment and were not the product of gross negligence or wilful or malicious conduct.[2] The arbitrator as part of his award ordered "[t]hat the [union]'s request for indemnification is granted to the extent that the proposal conforms to the State Police provision G. L. c. 258, § 9A." Section 9A (applicable to State Police officers), unlike § 9 ("may indemnify"), provides for mandatory indemnity.[3]

The city argues that an arbitrator is without authority to order it to forgo its discretionary power to decide whether to indemnify on a case-by-case basis; to enforce such an order, it argues, would divest the city of an exclusive managerial prerogative in conflict with the discretion conferred on it by § 9. The argument is, in our view, sound, and it finds support in the language of our decision in *Filippone* v. *Mayor of Newton*, 16 Mass. App. Ct. 417, 427 (1983), *S.C.*, 392 Mass. 622 (1984) (reversing on other grounds). There we said that "G. L. c. 258, § 9 (and the substantially identical G. L. c. 258, § 13), are specific in their terms and were intended by the Legislature to confine (on grounds of public policy) indemnification of public employees by their employers to covered cases [meeting the conditions of § 9]. By these restrictions, the Legislature apparently sought to limit the ability of public employers to expose

---

[2] It is not entirely clear from § 9 whether the condition relating to gross negligence or wilful or malicious conduct applies to civil rights violations only or also to intentional torts. Nothing turns on that question in this case.

[3] The city's corporation counsel sought clarification by the arbitrator of what he meant by the quoted wording. The arbitrator replied that "it was and is my intention that the City should defend and indemnify all officers to the extent permitted by law."

the taxpayers to potentially sizeable financial obligations arising out of intentional torts and civil rights violations committed by public employees. . . . We . . . view the statutes as a comprehensive treatment of the subject of indemnification in this area and as designed 'to preclude the exercise of any [inconsistent] local power or function on the same subject.' *Bloom* v. *Worcester*, [363 Mass. 136,] 155 [(1973)]."[4]

The union argues that the *Filippone* decisions support its contention that mandatory indemnification does not conflict with § 9 because the Newton ordinance there upheld provided for mandatory indemnification of certain municipal officers. The contention is unsound for two reasons. First, the mandatory character of the indemnification was a point that was not raised by the parties and was neither discussed nor, so far as appears, noticed by either court. Those decisions are not binding precedent on an issue not considered or decided therein. Second, in the *Filippone* case the city, acting through its duly constituted legislative processes, had provided by ordinance for blanket indemnification of a class of officers whose alleged acts fell within the conditions for indemnification fixed by § 9. The *Filippone* decisions are not authority for the power of an arbitrator to commit Boston against its will to mandatory indemnification of any class of officers or employees. See and compare *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 180-182 (1997), concerning statutes "authorizing the employer to perform a specific, narrow function," *id.* at 180, here, the exercise of judgment whether to indemnify its employees for losses resulting from acts committed in the discharge of their duties. Perhaps a municipality, acting through its legislative process, can make such a judgment in advance as to a class of its employees, but, in our view, a public employer cannot similarly divest the municipality of its discretion in this regard

---

[4]The Supreme Judicial Court's point of disagreement with our decision in *Filippone* focused on our conclusion that § 9 did not sanction a Newton ordinance that provided for the city, during litigation, to pay the legal fees and expenses incurred for defense of the mayor by private counsel. Our conclusion had been that the Newton ordinance differed from § 9 in permitting such payments, 16 Mass. App. Ct. at 422-426. The Supreme Judicial Court concluded that § 9 did permit such payments and that the ordinance did not differ materially from the statute, 392 Mass. at 629, 630. The Supreme Judicial Court did not dispute our premise that § 9 fixed the outer limits of permissible indemnification in cities and towns that have not adopted G. L. c. 258, § 13.

by contract or by the decision of an arbitrator. Compare G. L. c. 258, § 13, a local option statute by which a municipality can divest its public employers of discretion in this regard, with § 9, a self-executing statute applicable in every municipality, which does vest such discretion in the public employer.[5]

The judge did not err in concluding that the arbitrator acted in excess of his authority in purporting to make indemnification mandatory as to members of the bargaining unit.

## RESIDENCY IN BOSTON

The city sought a provision in the collective bargaining agreement imposing a requirement of residency in the city as to all patrolmen thereafter hired. In effect, the city sought thereby to take advantage of a statute, G. L. c. 41, § 99A, providing that a city, either by ordinance or collective bargaining agreement, may require that members of the regular police department hired thereafter must be residents of the city.[6] The union opposed the provision. Alternatively, it asked that, if the arbitrator

---

[5]The union argues that the arbitration award is indistinguishable from the municipal ordinance in *Filippone* because of the requirement in St. 1973, c. 1078, § 4A(3)(*a*), as amended by St. 1987, c. 589, § 1, that provisions of an award that require funding be submitted to the appropriate legislative body for approval. The required submission, however, is normally understood to apply to portions of the award calling for a predictable and quantifiable expenditure in the initial year of the agreement, primarily payroll items, such as salary increases, *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 214 (1982); *Somerville* v. *Somerville Mun. Employees Assn.*, 418 Mass. 21, 22-25 (1994); shift and weekend pay differentials, *Alliance, AFSCME/SEIU* v. *Secretary of Admn.*, 413 Mass. 377, 379-380 (1992); increases in contributions to employee health plans, *ibid.*; minimum staffing requirements, *Billerica* v. *International Assn. of Firefighters, Local 1495*, 415 Mass. 692, 696 (1993); and new job security provisions, *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 395 Mass. 232, 233 (1985). The indemnification provision at issue, undertaking financial responsibility for future contingencies, is not a cost item calling for submission under the statute. Moreover, even if it did necessitate immediate appropriation, the process for approval is different from the normal legislative process for an appropriation: the mayor, in particular, is effectively shorn of his usual discretionary role. See *Boston Teachers Union, Local 66* v. *Boston*, 382 Mass. 553, 559-560 (1981); *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 471-475 (1976). See also G. L. c. 150E, § 7(*c*).

[6]Section 99A provides that, in the absence of a local ordinance or by-law or provision in a collective bargaining agreement, persons hired into a regular police department after August 1, 1978, must reside within fifteen miles of the city or town. The arbitrator's decision, the judge's decision, and the parties' briefs make reference to a Boston ordinance on the subject of residency

should decide the point in the city's favor, he also include a grandfather clause with portability: that is to say, one that would exempt from the residency requirement current members of the bargaining unit even if they should be promoted out of the bargaining unit (patrolman to sergeant, for example) into a unit subject to a different collective bargaining agreement. The point was of concern to the union because the city had recently concluded a contract with the Boston Superior Officers Federation that included a residency provision.

The arbitrator adopted the union's suggestion: his award ordered that the agreement have a residency clause, but with portability.[7] The judge ordered the portability clause struck from the award, ruling that the arbitrator's authority extended only to resolving disputes as to the terms and conditions of employment of "patrol officers in the bargaining unit while they remained members of the bargaining unit." To that effect, see *Allied Chem. & Alkali Wkrs. of America, Local Unit No. 1* v. *Pittsburgh Plate Glass Co.,* 404 U.S. 157, 164 (1971), on which the judge relied.

The judge's resolution of that issue seems persuasive, particularly as applied to cases such as this in which promotion out of the bargaining unit would normally bring the officer or employee involved under the aegis of a different collective bargaining agreement negotiated by a different bargaining unit. But the issue is one we are not required to resolve in this case. The reason is that G. L. c. 41, § 99A (as appearing in St. 1978, c. 373, § 1), by its terms, requires that a municipal residency provision adopted through a collective bargaining agreement "shall apply only to those members of a regular police or fire department appointed subsequent to the adoption of . . . [the] agreement." A fair reading of the statute is that it exempts from a collectively bargained residency requirement those who were already members of the department at the time the agreement took effect. It stretches the statutory language to argue, as the

(Ordinances, c. 9 [1976]), but the record does not furnish the text of the ordinance or describe its effect. Neither party suggests that the ordinance has any bearing on the question before the court. Accordingly, we can only assume it is not material.

[7]The clause was to read: "All members of the bargaining unit shall be residents of the City of Boston and subject to the terms of the City of Boston Ordinance (Ord. 1976, c. 9). All bargaining unit members who are on the Department payroll as of the date of the execution of this agreement shall not be subject to the terms of the City residency ordinance during their employment with the Boston Police Department."

city does, that a patrolman should be considered newly appointed to the department upon promotion to a superior rank within the department. Compare, in this regard, the civil service law, in which "seniority is determined by length of service in permanent civil service employment, not by length of service in title or rank." *Dedham* v. *Dedham Police Assn. (Lieutenants & Sergeants)*, 46 Mass. App. Ct. 418, 421 n.3 (1999). While the issue, precisely speaking, may not be moot, it is clear that the parties are asking that we resolve an issue of pure principle, one that cannot have any practical consequence so long as overriding State law forbids application of a collectively bargained residency requirement to any incumbent member of a police department at the time of its adoption, regardless of rank or bargaining unit. The judge's order striking the portability clause, while probably of little legal consequence, may have the advantage of clarifying that the source of the grandfather protection is not the agreement but the mandate of the statute.[8]

*Judgment affirmed.*

---

[8]In view of the purely duplicative or redundant nature of the portability provision, it would make little sense to rule, as the union asks, that excision of that part should result in the invalidation of the entire residency provision of the agreement. The judge was correct in treating the portability provision as severable. See *Marlborough Firefighters, Local 1714* v. *Marlborough*, 375 Mass. 593, 596-598 (1978).