# Brockton Police Association & another[1] *vs.* City of Brockton & another.[2]

No. 01-P-932.

Plymouth. December 13, 2002. - March 26, 2003.

Present: Beck, Dreben, & McHugh, JJ.

*Public Employment,* Police, Residence requirement, Collective bargaining. *Police,* Collective bargaining. *Municipal Corporations,* By-laws and ordinances.

A trial court judge correctly concluded that G. L. c. 41, § 99A, permitted application of a residency requirement contained in an ordinance adopted by the city of Brockton in 1991 to any Brockton police officer appointed after the ordinance's effective date and, therefore, that no statutory violation arose from the city's enforcement of a residency clause with a 1996 effective date contained in a 1998 collective bargaining agreement. [674-676]

Civil action commenced in the Superior Court Department on February 7, 2000.

The case was heard by *Charles J. Hely*, J., on motions for summary judgment.

*Sheilah F. McCarthy* for the plaintiffs.

*Benjamin P. Albanese, Jr.*, Assistant City Solicitor, for the defendants.

Dreben, J. In this action, the plaintiffs Brockton Police Association (Association) and police officer Andrew Kalp sought to have a residency clause in a 1998 collective bargaining agreement between the Association and the city of Brockton (city) declared invalid as applied to thirty-six police officers who were hired prior to the date of the agreement. The plaintiffs contend that, despite the existence of a 1991 Brockton ordinance mandating Brockton residency for all city employees, the residency

[1]Andrew Kalp.

[2]Brockton police department.

requirement applicable to the thirty-six officers was imposed not by the ordinance, but by the collective bargaining agreement. The agreement was executed on May 27, 1998, and the plaintiffs claim that G. L. c. 41, § 99A (see note 3, *infra*), only permits application of the residency requirement to police officers appointed subsequent to that date. See *Boston* v. *Boston Police Patrolmen's Assn., Inc.*, 48 Mass. App. Ct. 74, 78 (1999). A judge of the Superior Court disagreed, and on cross motions for summary judgment, ruled for the city, declaring that all police officers in the collective bargaining unit covered by the May 27, 1998 agreement "who were first hired . . . on or after January 1, 1996, must comply with the City of Brockton residency ordinance." We affirm.

The controversy arose in the following context. General Laws c. 41, § 99A, set forth in the margin,[3] provides that members of police and fire departments of cities and towns must reside within fifteen miles of the city or town limits, but permits cities or towns by local ordinance, by-law,[4] or collective bargaining agreement to require that members of such departments be city or town residents, provided that such local ordinance, by-law or collective bargaining agreement shall only apply to members appointed subsequent to the adoption of such ordinance, by-law or agreement.

---

[3]General Laws c. 41, § 99A, as amended through St. 1981, c. 446, provides: "Any member of the regular police or fire department and fire alarm division of a city or town appointed subsequent to August first, nineteen hundred and seventy-eight shall reside within fifteen miles of the limits of said city or town . . . provided however, if any said city or town by local ordinance or by-law to which the provisions of paragraph (d) of section seven of chapter one hundred and fifty E of the General Laws shall apply, or by collective bargaining agreement shall require the members of a regular police or fire department appointed on or after August first, nineteen hundred and seventy-eight to be residents of such city or town, the provision of such local ordinance, by-law or collective bargaining agreement shall supersede the provision of this section and provided further such local ordinance, by-law or collective bargaining agreement shall apply only to those members of a regular police or fire department appointed subsequent to the adoption of such local ordinance, by-law or collective bargaining agreement."

[4]The statutory language provides for the applicability of G. L. c. 150E, § 7(*d*), to such ordinance or by-law. Thus, if a collective bargaining agreement conflicts with an ordinance or by-law issued pursuant to § 99A (a matter within the scope of negotiations under G. L. c. 150E, § 6), the terms of the collective bargaining agreement shall prevail.

Brockton enacted such an ordinance to be effective in 1992. The ordinance in relevant part provides:

> "Every person first employed by the City of Brockton on or after the first day of January, 1992, shall be a resident of the city or shall, within one (1) year after such person commences to be employed by the city, establish residency within the city."[5]

Since 1994, the city has required each new hire to sign a certificate indicating the applicant's address as of the date of hire and acknowledging that as a condition of employment with the city, the applicant, pursuant to the ordinance, must become a resident of Brockton within one year.[6] A collective bargaining agreement between the city and the Association, executed on December 5, 1994, subsequent to the ordinance, and effective from July 1, 1994 to June 30, 1997, did not mention the issue of residency.

In 1996, the city brought an action against four groups of individual Brockton police officers (the Association was not a party to the action) seeking to require them to comply with the ordinance's provisions. During the pendency of the city's action, the city and the Association negotiated a successor collective bargaining agreement covering the period from July 1, 1997 to June 30, 2000. That agreement was executed on May 27, 1998, and contained the following provision:

*"RESIDENCY*
All employees first hired by the City of Brockton on or

---

[5]The ordinance, inter alia, also provides:

"Failure of an employee to establish residency within the City of Brockton within one (1) year after commencement of employment with the city shall be determined to be a voluntary termination of employment by such employee. . . .

"Upon taking employment with the city, and annually on July 1st thereafter, every person subject to this section shall file with his or her department head . . . a certificate signed under the pains and penalties of perjury, stating his or her name and place of residence."

[6]This is stated in an affidavit of James Silva, president of the Association.

after January 1, 1996 shall be bound by the provisions of the city residency ordinance."

In October, 1998, several months after the city and the Association agreed on the new collective bargaining agreement, the city dismissed its 1996 action by agreement of the parties.

In the present action brought by the plaintiffs in early 2000, the judge determined that the ordinance, rather than the 1998 collective bargaining agreement, created the residency requirement and, therefore, the January 1, 1996 effective date of the residency clause of that agreement was valid. The plaintiffs contend, however, that both the facts and the law indicate that, in the absence of a collective bargaining agreement, the city could not have enforced a residency requirement against Brockton police officers. They first claim that the record does not support the judge's "factual finding" that the city's ordinance "was enforced against police officers . . . in the plaintiff group, well before the May 27, 1998 collective bargaining agreement."[7] While the record does contain support for the judge's finding, the issue is of no legal consequence.

There is no doubt that the city attempted to enforce the ordinance prior to May 27, 1998. Even if made in good faith, the refusal of certain police officers to comply with the ordinance surely cannot render the ordinance inoperative or establish for purposes of c. 41, § 99A, that the residency requirement was imposed by the collective bargaining agreement. The validity or effect of an ordinance does not depend on the lack of success of enforcement or the diligence of city officials. See *Doris* v. *Police Commr. of Boston*, 374 Mass. 443, 449 (1978), where the court rejected an analogous attempt to find a statute ineffective, saying,

[7]Although acknowledging, as Silva's affidavit states, that new hires have long been required to sign a certificate and agree to become residents, the plaintiffs claim there is no evidence that the city successfully enforced the terms of the ordinance after police were hired and represented by the Association. They point to the need for the 1996 lawsuit. They also refer to memoranda from the city's director of personnel to urge that factually it was the collective bargaining agreement that imposed the residency requirement. The memoranda stated that "the [r]esidency [o]rdinance has been bargained with all city unions, however the effective date does differ for some unions."

"The plaintiff's claim . . . is that the lack of enforcement of the statute induced Boston police officers to purchase homes in cities and towns surrounding Boston on the presumption that § 99A was a 'dead letter.' It would indeed be a most serious consequence if we were to conclude that the inattention or inactivity of government officials could render a statute unenforceable and thus deprive the public of the benefits or protections bestowed by the Legislature." (Footnote omitted.)

In addition to their factual contention, the plaintiffs claim that since a changed policy concerning residency is a mandatory subject of bargaining, see *Lee* v. *Labor Relations Commn.*, 21 Mass. App. Ct. 166, 167 (1985), the city could not unilaterally impose the requirement as a condition of employment. As a consequence, they assert, "the residency requirement as it applies to Brockton police officers cannot be said to have been adopted until May 27, 1998." This argument, too, fails. That Brockton may have been required to bargain concerning the ordinance in 1998, or on such earlier date as requested by the union, does not determine that it is the collective bargaining agreement, and not the ordinance, that for purposes of § 99A establishes the requirement of residency. The plaintiffs claim that whenever a collective bargaining agreement includes a residency clause, it, rather than an ordinance, is operative. Contrary to that contention, § 99A does not limit the application of ordinances or by-laws to cases where employees are not represented by a collective bargaining organization. Moreover, a union may waive its right to bargain by inaction. *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 570 (1983).[8]

Here, there is no issue of a refusal to bargain; the parties did bargain and reached an agreement that employees first hired on or after January 1, 1996, would be bound by the ordinance. With this clause, the city agreed to limit the applicability of the ordinance, in effect waiving its applicability to police officers appointed before January 1, 1996. There is no basis for the

---

[8]It may be that the silence of the 1994 collective bargaining agreement, despite the 1992 effective date of the ordinance, reflected a deliberate choice of the union not to request bargaining on this issue.

plaintiffs' claim that they should not be bound by what the Association bargained for.

Even if the agreement also implemented the ordinance's application, here, unlike the situation in *Boston* v. *Boston Police Patrolmen's Assn., Inc.*, 48 Mass. App. Ct. at 78, the ordinance was the subject of bargaining and the catalyst for the residency clause in the agreement. In such circumstances, we conclude that § 99A permitted application of the residency requirement to any officer appointed after the ordinance was adopted in 1992. Necessarily, therefore, no statutory violation arose from enforcement of the January 1, 1996 date the parties agreed to insert in the collective bargaining agreement they adopted on May 27, 1998.

*Judgment affirmed.*